# NANCY FRYE

*v.*

# ALEXANDER PARTRIDGE.

1. VENDEE—*bound by valid agreement of his vendor as to use of land.* Where a person purchases real estate with full notice of a valid agreement between his vendor and the original owner, concerning the manner in which the property is to be occupied, he will be bound to abide by the contract under which the land was conveyed.

2. SAME—*equity will restrain violation of terms on which land is conveyed and to be used.* Where the owner of land lying on both sides of a river, across which he is operating a ferry, conveys to another a portion of the land, but, for the purpose of protecting his ferry from opposition, provides in the deed that neither the purchaser, nor his heirs or assigns, shall establish or authorize the establishment of a common ferry-boat landing on the land conveyed, without permission from the grantor, such provision is obligatory on the assignee of such grantee, and a court of equity will, at the suit of a devisee of the original owner, enjoin the establishment of a ferry landing on such land.

3. SPECIAL LEGISLATION—*authorizing establishment of ferry at a particular place.* An act, the title of which is "An act to authorize the establishment of a ferry across the Illinois river," and which is limited in its application to one ferry, and that one located at a definite place, is a special act, and is, therefore, unconstitutional.

APPEAL from the Circuit Court of Peoria county; the Hon. JOSEPH W. COCHRAN, Judge, presiding.

Messrs. STARR & CONGER, for the appellant.

Messrs. PUTERBAUGH, LEE & QUINN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Nancy Frye against Alexander Partridge. to enjoin him from using and operating a ferry across the Illinois river, near the city of Peoria, and within a mile and a half of a ferry operated by her.

The cause was heard upon the bill, answer, replication, and a stipulation of the parties in regard to the facts. The court, upon the hearing, dissolved the injunction and dismissed the bill. To reverse the decree rendered by the circuit court, the complainant in the bill has brought this appeal.

It appears, from the stipulation containing the facts as agreed upon by the parties to the record, that in January, 1849, Lewis & Mathis owned, in fee, frac. sec. 3, and the north half of sec. 10, in township 26, range 4 west, in Tazewell county, and a part of sec. 26, township 9 north, range 8 east, in Peoria county, the two tracts forming the banks and lying on opposite sides of the Illinois river, some three miles above the city of Peoria. Lewis & Mathis had, for several years, operated a public ferry across the river where their lands were situated, but they had no license from any source. At the same time, Lewis owned an eight acre tract in south-east frac. quarter of sec. 10, in Tazewell county, which was the ferry landing on the Tazewell side.

On the 22d day of January, 1849, Lewis sold and conveyed the eight acre tract, by general warranty deed, to Coleman J. Gibson, but, for the purpose of protecting his ferry from opposition, he inserted the following clause in the deed: "It is expressly understood, in this contract or deed, that Coleman J. Gibson, of the second part, and his heirs and assigns, are not to establish or authorize the establishment of a common ferry-

boat landing on such land, to ply between there and the opposite shore, without having permission from the said Lewis, of the first part, or his heirs or assigns."

In April, 1853, Lewis & Mathis sold and conveyed these lands and ferry to Smith Frye, and he, on the 15th day of February, 1855, procured from the legislature a charter, which authorized him, his heirs and assigns, to establish and maintain, for a period of fifty years, a ferry across the river, from the lands purchased of Lewis & Mathis.

Section 2 of the charter is as follows: "That the privilege hereby granted shall continue and be extended for the period of fifty years, and that no other ferry shall be established within one and one-half miles of the ferry established by this act, by the county court or courts of either of the said counties of Peoria or Tazewell, during the period aforesaid, nor by any other authority except that of the General Assembly of this State, nor by the said General Assembly unless the public good shall require the same."

Smith Frye expended large sums of money in building boats, making roads and embankments, and the ferry has been in constant operation to the time of filing the bill. The appellant derived title by devise from Smith Frye, now deceased.

It also appears, that on the 24th day of January, 1874, the legislature passed an act which refers to the provisions of the charter granted to Smith Frye, and declares that " it is made to appear to the General Assembly that the public good requires the establishment of another ferry across the Illinois river, south of said ferry, within less than one and one-half miles thereof. Therefore,

" SEC. 1. *Be it enacted, etc.*, That full power and authority is hereby given to the county board of each and all the counties that are or may be concerned in the establishment thereof, at any place within the said distance, in such manner and upon such conditions as is or may be provided by law with reference to granting ferry rights, and to confer any and all powers upon any persons or corporations that shall establish such ferry that

might have been conferred if said exclusive right had never been granted."

It also appears, that appellee purchased of Walter Gibson, who inherited from Coleman J. Gibson, the eight acre tract, and, under the provisions of the act of Jan. 24, 1874, he proposed to obtain license from the county boards of Peoria and Tazewell counties, and operate a ferry, from the land so purchased, across the river, within a half mile of the ferry of appellant.

As appellee claims title to the eight acre tract under the deed from Lewis to Coleman J. Gibson, the first question to be considered is, how his rights and the rights of appellant are affected by that clause in the deed prohibiting the use of the land for a ferry-boat landing, for the purpose of operating a ferry from the land to the opposite shore of the river.

Whether the covenant contained in the deed is one that will run with the land, upon which an action at law might be maintained, is a question that it will not be necessary to consider or determine; but the real question presented is, whether the covenant or contract contained in the deed can be enforced in a court of equity against a subsequent purchaser, under a chain of title from Coleman J. Gibson, with notice of the covenant in the deed under which Gibson obtained title.

A brief reference to a few leading authorities in England and this country, will clearly settle the principle involved.

In *Tulk* v. *Maxhay*, 2 Phillips, 776, where A, being seized of the center garden and some houses in Leicester Square, conveyed the garden in fee to B, and B covenanted, for himself and his assigns, to keep the garden unbuilt, open, etc., on a bill brought to restrain a grantee of B from enforcing the covenant, it was said: "That this court has jurisdiction to enforce a contract between an owner and his neighbor purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. The owner of certain houses in the square sells the land adjoining, with a covenant from the purchaser not to use it for any other purpose than as a square garden;

and it is now contended, not that the vendee could violate the contract, but that he might sell the piece of land, and that the purchaser from him may violate it without this court having any power to interfere. If that were so, it would be impossible for any owner of land to sell part of it without incurring the risk of rendering what he retained worthless. It is said, the covenant being one which does not run with the land, this court can not enforce it; but the question is, not whether the covenant runs with the land, but whether the party should be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. * . * * * That the question does not depend upon whether the covenant runs with the land, is evident from this: that if there was a mere agreement and no covenant, this court would enforce it against a party purchasing with notice of it, for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

In that case, the original owner brought his bill against the assignee of the grantee in the original conveyance, while in the case under consideration the bill is brought by a grantee of the original owner; but that fact can not, in a court of equity, affect the principle involved, as the appellee succeeded to all the rights of the original grantor, in equity, even if she did not at law.

In *Mann* v. *Stephens*, 15 Sim. 377, the bill was brought by an assignee of one part of the premises against an assignee of another portion, and the same principle was announced. See, also, *Western* v. *McDermott*, Law Rep. 1 Eq. 499; *Whatman* v. *Gibson*, 9 Sim. 196.

The same question has been before the courts in Massachusetts, and the doctrine announced in the English cases was fully sustained.

In *Parker* v. *Nightingale*, 6 Allen, 341, it was said: "A court of chancery will recognize and enforce agreements concerning the occupation and mode of use of real estate, although

they are not expressed with technical accuracy, as exceptions
or reservations out of a grant, not binding as covenants real
running with the land.   Nor is it at all material that such
stipulations should be binding at law, or that any privity of
estate should subsist between parties, in order to render them
obligatory, and to warrant equitable relief in case of their in-
fraction.   A covenant, though in gross at law, may, neverthe-
less, be binding in equity, even to the extent of fastening a
servitude or easement on real property, or of securing to the
owner of one parcel of land a privilege, or, as it is sometimes
called, a right to an amenity in the use of an adjoining parcel,
by which his own estate may be enhanced in value, or rendered
more agreeable as a place of residence."

See, also, *Whitney* v. *Union Railway Co.* 11 Gray, 359;
*Jewell* v. *Lee,* 14 Allen, 150; *Badger* v. *Boardman,* 16 Gray,
559; *Gilbert* v. *Petelor,* 38 Barb. 488.

Appellee purchased with notice of the agreement in the
deed under which his grantor derived title, as the deed had
been upon record for many years, and it can not be claimed
he was misled or in any manner deceived, and, under the au-
thorities cited, it is within the power of a court of equity to
enforce the contract upon which, alone, Lewis, the original
owner, parted with the title to the land, and compel appellee
to abide by its terms and conditions.

It would be a strange doctrine, indeed, to hold that an owner
of real estate could not convey a part, and restrict its use in
such a manner as not to impair or lessen in value the portion
retained.

We are aware of no restriction upon the right of an owner
to convey upon such terms and conditions as he may see proper,
and as may be acceptable to the grantee, except that the right
should be exercised with proper regard to public policy. and
that the conveyance should not be made in restraint of trade.

When a vendee purchases with full notice of a valid agree-
ment between his vendor and the original owner, concerning
the manner in which the property is to be occupied, it is but
a reasonable and equitable requirement to hold him bound to

abide by the contract under which the land was conveyed. We are, therefore, of opinion, that the provision in the deed prohibiting the use of the eight acre tract for ferry purposes, is obligatory upon appellee, and it was within the power of a court of equity to enjoin him from using the land in a manner and for a purpose actually prohibited by the terms of one of the deeds which is a link in the chain of title under which he holds the land.

It is, however, claimed, that the agreement in the deed is in restraint of trade, contrary to public policy, and void.

If the argument is a good one, it would apply as well to Lewis, the original owner, had he retained the eight acre tract, and we are aware of no principle that would require him to part with his land so that it might be used in some particular manner, which, in the opinion of some, might be regarded for the interest of the public. Whenever this land is needed for the use of the public, it can be condemned under the power of eminent domain, and the rights of appellee and all others in the property taken and used for the public, upon making compensation. This will fully answer the demands of the public, and, at the same time, protect the private citizen in the free enjoyment and use of his property, in the manner that to him may seem best for his own interest.

The record discloses another serious objection to the right of appellee to use and operate the ferry.

The constitution prohibits the legislature from chartering or licensing ferries or toll bridges by local or special laws. The title to the act under which appellee predicates his right, would seem to indicate that the act was special. It is in the following language: " An act to authorize the establishment of a ferry across the Illinois river." But when an examination is made of the law itself, there can not be a doubt but its object and purpose is special. It is not only limited in its application to one ferry, but that one is located at a definite place. The counties concerned are authorized to act. These counties are Peoria and Tazewell, as the river is the line between the two, and the ferry is to cross the river at a designated place.

18—82D ILL.

If the act had directly authorized the counties of Peoria and Tazewell to establish a ferry across the Illinois river within a half mile of appellant's ferry, it would have been no less objectionable as a special or local act than the act is as framed. There is no feature in the act general in its application, but its whole scope and purpose are special.

The object and intent of the constitution was, to remove from the legislature the power to charter, license or establish ferries, either directly or indirectly, except by general law. We are, therefore, of opinion, that the act in question is in direct conflict with the constitution.

Other questions have been discussed, but it will not be necessary to consider them.

For the errors indicated, the decree will be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE BREESE: I do,not concur in this opinion.

Mr. CHIEF JUSTICE SHELDON dissents.