Jane C. VanSant et al. Defendants in Error, vs. Alvida A. Rose et al. Plaintiffs in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 3, 1913.*

1. Deeds—*restrictive covenants in a deed are valid unless contrary to public policy.* A restrictive covenant in a deed by which the grantee agrees not to erect a flat-building upon the lot for a period of twenty years unless the grantors consent thereto is not against public policy or public interest and is valid.

2. Same—*wife taking title from husband is bound by his covenants.* A wife who acquires title from her husband through an intermediary is bound by restrictive covenants in the deed to him, which was recorded, and she is in no better position than he to resist the enforcement of such covenants.

3. Same—*right to enforce restrictive covenant does not depend upon whether complainants own any property.* The right of the grantors to enforce a restrictive covenant against the erection of a flat-building on the lot does not depend upon whether they own any property in the vicinity, as such right does not depend upon whether the grantors will be damaged by a breach of the covenant. (*Hays* v. *St. Paul M. E. Church,* 196 Ill. 633, explained.)

4. Pleading—*equivocal allegations are taken most unfavorably against the pleader.* Allegations in a pleading which are in any degree equivocal must be taken in the sense most unfavorable to the pleader.

5. Same—*what must be averred where it is sought to avoid the effect of a restrictive covenant.* A party who seeks to avoid the effect of a restrictive covenant in a deed under the rule that such a covenant will not be enforced where the conditions have so changed as to render its enforcement inequitable, must aver, in unequivocal terms, that the changes relied upon have occurred since the execution and delivery of the deed, as changes occurring prior to that time cannot be availed of.

Writ of Error to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon Adelor J. Petit, Judge, presiding.

Lee & Lee, (Albert M. Kales, of counsel,) for plaintiffs in error.

260 — 26

Hollett, Sauter & Henkel, and Wilson, Moore & McIlvaine, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

Defendants in error (hereafter referred to as complainants) filed the bill in this case to enjoin plaintiffs in error (hereafter called defendants) from erecting a flat-building on the premises described, in violation of restrictive covenants in the deed from complainants to defendants. The Chicago Title and Trust Company was made a defendant as trustee in a trust deed executed by defendant Alvida A. Rose to secure a loan. An injunction *pendente lite* was granted, and defendants appealed from that order, under section 123 of the Practice act, to the Appellate Court for the First District. That court affirmed the decree granting the temporary injunction, and thereupon defendants filed their answer to the bill in the court below. Complainants filed exceptions to parts of the answer, which were sustained. Defendants elected to stand by their answer, and a final decree was entered making the injunction perpetual, as prayed in the bill. The decree was affirmed by the Appellate Court, and the record is brought to this court for review by writ of *certiorari.*

It appears from the allegations of the bill that complainants were seized in fee simple of lot 1 and the north 43.86 feet of lot 2, in block 14, in Cochran's Second addition to Edgewater, Cook county, Illinois, and on or about December 16, 1904, conveyed said premises, by deed bearing date September 6, 1901, to Frank A. Rose, the deed containing the following restrictive covenants: "It is hereby expressly covenanted and agreed that neither said party of the second part, nor his heirs, executors, administrators or assigns, shall erect any fence, enclosure or obstruction to view on said lots within thirty (30) feet of the front or side street line of said lots for a period of ten years from the date hereof, and shall not build any wall of any build-

ing erected on said lots within said thirty (30) feet of the front or side street line of said lots for a period of twenty years from the date hereof, without the written consent of said party of the first part. * * * It is hereby expressly covenanted and agreed that neither said party of the second part, nor his heirs, executors, administrators or assigns, shall build or cause to be built on said lots any building known as a flat or tenement building, hereby covenanting to erect thereupon only a single private dwelling house (excepting the stable as aforesaid) 'for a period of twenty years from this date." The bill alleged that Frank A. Rose, through an intermediary, has conveyed the premises to his wife, Alvida A. Rose, and that said defendants, Alvida A. and Frank A. Rose, were about to erect on the premises a large apartment house or flat-building and place the north wall thereof substantially on the lot line, all in disregard of the covenants and reservations in the deed from the complainants.

Defendants did not deny their intention to violate the covenants and restrictions as alleged in the bill. The defenses set up by the answer are: (1) That complainants did not at the time of filing the bill, or for a long time prior thereto, own other property anywhere in the vicinity or neighborhood that would be affected by a breach of the covenants, and they therefore had no interest that would entitle them to maintain the bill against a grantee of the covenantor; (2) that even if they originally had a right to enforce the covenants, through changed conditions in the neighborhood it has now become inequitable and would be unjust and oppressive to do so. Defendants' position is, that in order to entitle a complainant to relief against the violation of a restrictive covenant with regard to the use of real estate conveyed, and especially against an assignee of the original covenantor, such complainant must show some right or beneficial interest in the land affected by the

covenant, or in adjoining lands, which will be injured as a result of the failure to perform the covenant.

There is no dispute that covenants of the character here involved are lawful and valid and are in the class of covenants courts of equity will enforce by enjoining their breach. Nevertheless, it is insisted that this case affords no ground for equitable relief because it does not appear from the bill that complainants own any neighboring land to be affected in any way by a breach of the covenants. Counsel on both sides have filed voluminous briefs, in which they have cited and extensively discussed many cases decided by the courts of this country and of England having more or less bearing upon this question. They are not altogether harmonious and in most of them the precise question here presented was not involved. In our opinion the rule contended for by defendants cannot be applied in this case. Complainants are the original covenantees. Alvida A. Rose is not the original covenantor, but she received her title, through an intermediary, from her husband. The deed to her husband containing the covenants was on record and she had notice of them. She is in no better position to resist the enforcement of the covenants than her husband would have been, and is to be treated, and will be referred to hereafter, the same as if she were the covenantor. We must assume that the covenants formed a part of the consideration for the conveyance and that complainants were unwilling to part with the land without the restrictions in the deed. As absolute control over the property was denied the purchaser by the restrictions assented to, he presumably paid less for it than he would otherwise have been required to pay. At all events, the restrictions were mutually agreed to. They are plain and unambiguous, and there is no pretense that there was any concealment of any fact when they were agreed to. Can defendants now violate or disregard the contract on the ground that its performance will be of no benefit to complainants? It does not appear that the

relations of the parties complainant to the property have changed since the covenants were agreed to. The answer avers that complainants did not then own, and had not for a long time prior thereto owned, any land in the neighborhood of the property. If the defendants may now disregard their covenants, it is because they were not valid or enforceable when made.

In *Wakefield* v. *VanTassell*, 202 Ill. 41, this court, in discussing the validity of restrictions and conditions in deeds of conveyance, said: "The condition as expressed in the deed is plain and unambiguous and needs not the aid of a court to construe its meaning. Parties have a right to make deeds and insert therein such conditions as they see fit, and contracts entered into freely and voluntarily must be held sacred and be enforced by the courts. As the parties make their deeds and contracts so the courts must take them; and yet they must not be such contracts as are in contravention of the paramount principle of public good. So long as the beneficial enjoyment of an estate conveyed in fee simple is not materially impaired by restrictions and conditions contained in a deed, such restrictions and conditions, as to the mode of its use, are held valid. The enforcement of these conditions by the courts arises from the principle of law that every owner of the fee has the legal right to dispose of his estate either absolutely or conditionally, or to regulate the manner in which the estate shall be used and occupied, as the grantor may deem best and proper. Just so long as the conditions and restrictions are not violative of the public good or subversive of the public interests they will be enforced."

Conditions and restrictions in conveyances have always been held valid unless contrary to public policy or the public interest. In *Frye* v. *Partridge*, 82 Ill. 267, the court said: "It would be a strange doctrine, indeed, to hold that an owner of real estate could not convey a part and restrict its use in such a manner as not to impair or lessen in value

the portion retained. We are aware of no restriction upon the right of an owner to convey upon such terms and conditions as he may see proper and as may be acceptable to the grantee, except that the right should be exercised with proper regard to public policy and that the conveyance should not be made in restraint of trade. When a vendee purchases with full notice of a valid agreement between his vendor and the original owner concerning the manner in which the property is to be occupied, it is but a reasonable and equitable requirement to hold him bound to abide by the contract under which the land was conveyed."

In *Star Brewery Co.* v. *Primas,* 163 Ill. 652, the court said of restrictive covenants: "As it is a negative covenant there is no reason why its breach may not be enjoined. There is nothing illegal in the nature of the contract itself. It is not void as being in restraint of trade, because it is not a contract in general restraint of trade but merely prevents the use of a particular piece of property in a certain way. Restrictions imposed upon the use which are not undue, but limited, only, are not in violation of law. (*Duncan* v. *Central Pass Railway Co.* 85 Ky. 525.) While it is true that, where land is conveyed in fee, restrictions in the use are not favored, yet it is also true that where the intention of the parties is clear in the creation of restrictions upon the use of a grantee, courts will enforce the same.—*Hutchinson* v. *Ulrich,* 145 Ill. 336."

In *Hays* v. *St. Paul M. E. Church,* 196 Ill. 633, the court said: "An owner has a right to sell and convey his property upon such terms and conditions as he may see proper, and if the terms are accepted by the grantee, and are not objectionable in law, they will be enforced at the suit of the one in whom the right is vested."

True, a bill to enjoin the breach of restrictive covenants cannot be maintained by one having no connection with or interest in their enforcement, but we cannot agree that complainants had no interest. They were the original covenan-

.tees and by their conveyance of the property reserved an interest in it. They conveyed the property subject to that interest. They had a right to reserve such interest, and this right was not dependent upon the covenantees having other property in the vicinity that would be affected by a breach of the covenants or that they should in any other manner sustain damages thereby. This court has held, in harmony with the prevailing rule in other jurisdictions, that the right to enjoin the breach of restrictive covenants does not depend upon whether the covenantee will be damaged by the breach, but the mere breach is sufficient ground for interference by injunction. (Bispham's Principles of Equity,—4th ed.—par. 461; *Consolidated Coal Co.* v. *Schmisseur,* 135 Ill. 371; *Hartman* v. *Wells,* 257 id. 167.) It would seem inconsistent, then, to say, as the covenantees had no other land in the neighborhood they had no interest in the performance of the covenants. The only purpose their having other land in the vicinity could serve would be to show that they would be injuriously affected,—that is, damaged,—by a violation of the contract. But as their right does not necessarily depend upon their being damaged by the breach, it would seem it would not necessarily depend upon their owning other land in the vicinity. Bispham, in the paragraph above referred to, says it is no answer to an action of this kind to say the breach will inflict no injury upon the complainant or even that it will be a positive benefit. In *Steward* v. *Winters,* 4 Sandf. Ch. 587, (a suit to enjoin the breach of restrictive covenants in a lease,) it was contended the breach would cause no injury and also that the plaintiff had an adequate remedy at law for damages. The court held the grantor or lessor of land had a right to insist upon such covenants as he pleased touching the use and mode of enjoyment of the land, "and is not to be defeated, when the covenant is broken, by the opinion of any number of persons that the breach occasions him no substantial injury." That case was cited and the opinion quoted from

with approval in the *Schmisseur* and *Hartman cases, supra.*
Kerr on Injunctions (4th ed. p. 370,) says: " 'If there is
a negative covenant,' said Lord Cairns in *Doherty* v. *Al-
man,* (L.) 'the court has no discretion to exercise. If par-
ties for valuable consideration, with their eyes open, con-
tract that a particular thing shall not be done, all that a
court of equity has to do is to say, by way of injunction,
that the thing shall not be done. In such a case the injunc-
tion does nothing more than give the sanction of the process
of the court to that which already is the contract between
the parties. It is not, then, a question of the balance of
convenience or inconvenience or of the amount of damage
or injury; it is the specific performance by the court of
that negative bargain which the parties have made, with
their eyes open, between themselves.' " Pomeroy, in his
work on Equity Jurisprudence, (sec. 1341, 3d ed.) says:
"The amount of damages, and even the fact that plaintiff
has sustained any pecuniary damages, are wholly immate-
rial." In *Topping* v. *Eckersley,* 2 Kay & J. 264, it was
said: "If the construction of the instrument be clear and
the breach clear then it is not a question of damages, but
the mere circumstance of the breach of covenant affords
sufficient ground for a court to interfere by injunction."
In *Andrews* v. *Kingsbury,* 212 Ill. 97, this court said: "The
general rule that a writ of injunction should only issue
where there is an unquestionable right and where irreparable
injury will be suffered, and there is no adequate remedy at
law either on account of the insolvency of the defendant or
for some other cause, is not applicable to this case. Courts
of equity will, and frequently do, interpose by injunction,
thereby indirectly enforcing the performance of negative
covenants by prohibiting their breach; and where there is
an express negative covenant courts of equity will entertain
bills for injunctions to prevent their violation, even though
the same will occasion no substantial injury or though the
remedy be adequate at law."

In a majority of the cases to which we have been referred the question was not involved whether a covenantee having no other land in the vicinity of the land conveyed by the deed containing the restrictive covenants can maintain a bill to enjoin their breach. Such actions have most frequently been brought by covenantees owning other lands in the neighborhood. In *Formby* v. *Barker,* 2 Ch. 539, much relied on by defendants, the deed from Formby contained a restrictive covenant against the building of any "beer house or shop" on the land. Formby's grantee sold the land to Baker, and after Formby's death Baker proposed to erect a shop, but not a "beer shop," on the land. The administrator and universal legatee of Formby applied for an injunction. The injunction was denied on the ground that the covenant applied only to a beer shop and the erection of any other shop would not be a breach. The court also expressed the view that as Formby owned no other land contiguous to the land he conveyed, the covenant was a mere personal covenant collateral to the conveyance,— one that could not run with the land either at law or in equity,—and the burden of it could not be enforced against the assignee of the purchaser. *Dana* v. *Wentworth,* 111 Mass. 191, *Los Angeles University* v. *Swarth,* 46 C. C. A. 647, (107 Fed. Rep. 798,) and a few other cases, contain expressions supporting the position of defendants, but in none of them except *Dana* v. *Wentworth* was the decision based solely on the ground that relief would be denied a plaintiff seeking to enjoin the breach of restrictive covenants unless he was the owner of other land that would be affected by a disregard of the restrictions.

Numerous decisions of American and English courts will be found sustaining the covenantee's right to insist upon the observance of the restrictions without making the right dependent upon his owning related land or the existence of a dominant and servient estate. In our opinion *Hays* v. *St. Paul M. E. Church, supra,* clearly recognizes

the right of a covenantee owning no neighboring land to maintain a bill to enforce observance of restrictive covenants. In that case John A. King conveyed a vacant lot at the corner of Harrison street and Ashland boulevard to the First Methodist Episcopal Church of Chicago. The deed contained a provision that it was made subject to the condition that no building should be erected on the lot further east or nearer Ashland avenue than the house immediately south of the lot conveyed. The deed was recorded, and the lot by *mesne* conveyances subsequently became the property of the St. Paul M. E. Church. When John A. King conveyed the lot Nellie King Hays owned the house and lot immediately south of it and John A. King owned no other property in the vicinity. The church planned to erect a building on its lot with walls nearer the street than the walls of the house of Nellie King Hays, and she filed a bill to enforce the observance of the restrictive covenants in the deed from John A. King. We quote at length from the opinion: "It is not denied that the purchase from John A. King, and the acceptance of the conveyance subject to the provision contained in it, created a valid personal obligation to him. An owner has a right to sell and convey his property upon such terms and conditions as he may see proper, and if the terms are accepted by the grantee and are not objectionable in law they will be enforced at the suit of the one in whom the right is vested. (*Frye* v. *Partridge,* 82 Ill. 267.) If a subsequent owner has taken title with notice, either actual or constructive, of a binding agreement between his grantor and the original owner establishing a building restriction, he will be bound to abide by it and equity will enforce it. In this case there is no dispute that the defendant had notice of the building restriction from the recorded conveyance to the First Methodist Episcopal Church, and if it was imposed in favor of complainant's house and lot and for the benefit of the same, complainant would have a right to enforce it. The question is whether,

by the agreement between King and his grantee, defendant's lot was burdened with the restriction for the benefit of the complainant's lot so that she can enforce the agreement. The restriction was imposed by John A. King and the agreement was with him. Complainant was a stranger to that transaction, and there was no covenant or agreement between her and the defendant or its grantor. Her right to enforce the agreement must depend upon her making it appear that it was entered into for the benefit of her lot. In making his conveyance John A. King had a legal right to impose the condition from any motive, and it is immaterial what the motive was, and he could impose it in favor of property which he did not own and which belonged to complainant, if he saw fit to do so. When he executed his deed he did not own any other property in the block or in that vicinity. He did not own the lot or house south of the premises which he conveyed and had no interest in either. He had once owned the premises and had conveyed them by warranty deed December 1, 1889, to the complainant, who is his daughter, and, as a matter of fact, the conveyance was a gift to her. There was no agreement outside of the deed, either between King and the complainant or between either of them and the grantee. To establish complainant's right she must show the intention of the restriction to have been to benefit her lot, and this intention must arise out of the language of the deed, construed in the light of the surrounding circumstances. The intention is to be ascertained as in other cases,—not by learning some secret or unexpressed intention in the mind of King, but from the language of the deed itself, considered in connection with the circumstances existing at the time it was executed. (*Hutchinson* v. *Ulrich,* 145 Ill. 336.) The defendant is bound by what it had notice of but not by secret intentions of King. If the deed, in the light of the circumstances, expresses an intention to give complainant's property the benefit of the restriction she can enforce it in behalf of that property,

otherwise not.  In construing the provision restrictions are not favored, although where the intent is clearly manifested the court will enforce them.  When a fee is conveyed, limitations and restrictions upon the use of the property are not favored, and all doubts, as a general rule, are to be resolved against them.  (*Eckhart* v. *Irons,* 128 Ill. 568; *Hutchinson* v. *Ulrich, supra; Ewertsen* v. *Gerstenberg,* 186 Ill. 344.) The defendant took the premises bound by the agreement, and can be restrained from violating it at the suit of anyone having the interest."  · ·

Defendants attempt to explain away the force of the *Hays case* by construing the opinion to hold that John A. King had no interest in the land conveyed, and from that premise they argue that no right vested in him to insist on the observance of the restrictions, and that when it was said the defendant was bound by the agreement and could be enjoined from violating it at the suit of anyone having the interest, it was not meant John A. King could maintain the suit, because the court held he had no interest.  This reasoning is not supported by the opinion.  It is nowhere stated that John A. King had no interest in the premises conveyed by him.  He had no interest in any other property in the block or vicinity of that conveyed.  He reserved an interest in that property by the provisions inserted in the deed, and this court held that those provisions created a valid personal obligation to him; that this obligation was binding on the covenantor's grantee; that he had a legal right to impose the restrictions and his motive for doing so was immaterial; that he could have imposed them for the benefit of Mrs. Hays' lot but did not do so, and she therefore could not maintain the suit because she had no interest in the covenants.  It can hardly be imagined that a court would hold such restrictions constitute in the covenantee a valid and enforceable obligation if they gave the covenantee no interest in the property conveyed and might be disregarded by the covenantor.  We think the case holds, and

correctly holds, that by the provisions in the deed the grantor retained such an interest in the property that he could enforce the observance of the restrictions.  If this is incorrect, then, as the restrictions were not intended to be imposed for the benefit of anyone else or of any cther property, they were invalid and were not binding upon the covenantor when made.  But this court held emphatically that they were valid, binding and enforceable.  In answer to the argument that it would be inequitable to enforce the observance of the covenants under such circumstances, we quote from the opinion of Lord Cottenham in *Tulk* v. *Moxhay,* 1 Hall & Tw. 145: "Can there, then, be anything much more inequitable or contrary to good conscience than that a party who takes property at a less price because it is subject to a restriction should receive the full value from a third party, and that such third party should then hold it unfettered by the restriction under which it was granted? That would be most inequitable, most unjust and most unconscientious, and, as far as I am informed, this court never would sanction any such course of proceeding."

Defendants further contend that the circuit court erred in sustaining exceptions to that portion of the answer wherein it was averred that even if complainants originally had a right to enforce the covenants, it has now become inequitable and would be unjust and oppressive to do so because of the changed conditions in the neighborhood.  The bill was filed on January 30, 1912, and alleged that complainants executed and delivered on December 16, 1904, a deed to Frank A. Rose for the premises, bearing date September 6, 1901, containing the restrictive covenants in controversy; that the deed was accepted by the grantee, placed on record, and the restrictive covenants became binding on the said Frank A. Rose and all persons claiming any interest in the property through or under him.  The answer avers that in the last twenty-five years, and especially in the last ten years, the city of Chicago in the

vicinity in which the premises are located has greatly increased in population; that improvements in transportation facilities have made the vicinity increasingly available for a large population of city dwellers who desire and demand to dwell in apartments or flats; that the usual mode of improvement of property in the neighborhood for some years past has been by erecting apartment or flat-buildings with walls built upon the boundary lines of the lots or within less than thirty feet thereof; that so many of such apartment or flat-buildings have been constructed in the neighborhood that its predominant character, both immediate and remote, is one dedicated to, adapted for and used by apartment, flat or tenement buildings; that many of them have been constructed in direct violation of restrictions and covenants similar to those which defendants are charged with violating, and in many instances the persons violating such restrictions claim title by conveyance from complainants; and that owing to the changed condition of the locality, the purpose and object of the restrictions can no longer be carried out or accomplished. This portion of the answer was no doubt intended to bring the case within the rule announced in the cases holding that restrictive covenants will not be enforced where the property and neighborhood have, since the making of the restrictive covenants, so changed in character and environment that either the object of the restrictions could not be accomplished by their enforcement or by reason of such changes it would be inequitable and oppressive to enforce them. *Star Brewery Co.* v. *Primas, supra; Ewertsen* v. *Gerstenberg, supra; Curtis* v. *Rubin,* 244 Ill. 88; *Kneip* v. *Schroeder,* 255 id. 621; *Hartman* v. *Wells, supra.*

While the bill alleges that the deed from complainants to Frank A. Rose bore date of September 6, 1901, it is alleged the deed was executed and delivered December 16, 1904. The answer was filed March 11, 1912, and avers that by reason of the demands of an increased population

within the last twenty-five years, and more especially with-in the last ten years, conditions in the vicinity of the property involved, remote and immediate, have changed. This is not an averment that the changes have occurred since the execution and delivery of the deed containing the restrictive covenants. The averment might be true and still all the changes alleged in the answer have occurred prior to the execution and delivery of the deed. Defendants insist the restrictive covenants should be construed to have come into existence in September, 1901, the day the deed bears date, and to have then become obligatory. There is no averment in the bill of the existence of any contract between the parties prior to the execution and delivery of the deed. While it is alleged the deed bore date of September 6, 1901, there is no allegation that it was executed on that date, but the allegation is that it was executed and delivered on or about December 16, 1904. According to the bill the restrictive covenants were agreed to and became obligatory on that date. If conditions had changed since that time so as to bring the case within the rule announced in the decisions above referred to, it should have been so averred in the answer, so that a material issue would have been made by filing a replication. The allegations in a pleading, whether a bill or answer, when in any degree equivocal, must be taken in the sense most unfavorable to the party whose pleading is the subject of construction. (*Peipho* v. *Peipho,* 88 Ill. 438.) Tested by this rule, which is too familiar to require the citation of further authorities, we are of opinion the circuit court did not err in holding the answer was insufficient.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*