HERMAN H. WIEGMAN *et al.* Plaintiffs in Error, *vs.*
CHARLES H. KUSEL *et al.* Defendants in Error.

*Opinion filed December 22, 1915.*

1. BUILDING LINES—*force of building line restriction does not
depend upon whether it is a covenant running with the land.* The
force of a building line restriction does not depend upon the ques-
tion whether it is a covenant running with the land, but rests upon
the ground that one who purchases with notice of the agreement
will not be permitted to make use of his land in a manner incon-
sistent therewith.

2. SAME—*general rule as to enforcement of building line re-
striction.* The right to enforce a building line restriction estab-
lished as part of a general plan is based, not upon the agreement
made by the subsequent purchaser, but upon the theory that each
purchaser buying a lot with notice of the general plan impliedly
assents thereto and can be compelled to comply therewith at the
suit of the owner of any other lot, without reference to the order
in which the lots were sold.

3. SAME—*when purchaser will be bound by building restriction.*
One who takes title to a lot with notice, actual or constructive, of
a binding agreement between his grantor and the original owner
of the lot establishing a building restriction will be bound to abide
by it, and a court of equity will enforce it even though his deed
does not contain the restriction.

4. SAME—*effect where original owner re-purchases and conveys
without restriction.* Where all the lots in a block fronting on a
certain street are conveyed by deeds, each of which contains the
same building line restriction, the fact that the original owner re-
purchases some of the lots and conveys them without restriction
does not relieve the purchaser or his assigns from the binding
force of the restriction, where the restriction is shown in the rec-
ord of the original deeds and on the abstract of title.

5. SAME—*effect upon a building line restriction of change in
character of neighborhood.* Before a court of equity will refuse to
enforce a general building line restriction upon the ground that
there has been a change in the character of the neighborhood, there
must have been such change in the character and condition of the
adjoining property as to render the restriction inapplicable accord-
ing to the intent and spirit of the contract.

WRIT OF ERROR to the Superior Court of Cook county;
the Hon. DENIS E. SULLIVAN, Judge, presiding.

ANDERSON E. MARTIN, and ALVAH T. MARTIN, (NEW-TON WYETH, of counsel,) for plaintiffs in error.

JULIUS STERN, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error filed in the superior court of Cook county a bill for injunction to restrain defendants in error from erecting a building on certain lots, on the ground that the said action would be in violation of restrictions as to a building line. Defendants in error answered, and a hearing was had before the court and a decree entered finding in favor of defendants in error, the bill being dismissed. From that decree this writ of error was sued out.

The stipulation of facts in the record shows that the lots in question face north on West Monroe street, between Forty-seventh and Forty-eighth avenues. They are a part of Hobart's subdivision, platted in 1874. The plat contains no building line restrictions as to said lots. Twenty-four lots, all in the north half of block 3 and including those owned by the parties to this proceeding, belonged to Davenport Galbraith in 1888. E. A. Cummings & Co. were then acting as the agents of said Galbraith and sold all of said twenty-four lots to various purchasers during 1888 and the years immediately following. Plaintiff in error Wiegman at that time purchased lot 21 and the east nine feet of lot 22. His deed, and each of the deeds to the other twenty-three lots from Galbraith, contained the following provision: "This deed is granted upon the express condition and stipulation that no building be erected upon said above described premises prior to January 1, 1898, costing less than $2000, the necessary out-buildings of any residence excepted. Said second party also agrees not to build within thirty feet of the north line of said premises." Most, if not all, of these lots were sold at an auction sale conducted for the owner by said E. A. Cummings & Co.,

which latter firm had prepared maps and descriptive literature, in which was stated, among other things, "Building line thirty feet back from street." The abstract of title covering the lots of defendants in error includes a copy of the building restriction as contained in the deed above mentioned. The lots of defendants in error were originally conveyed to other parties, the deeds containing said restriction. Said lots were afterward re-purchased by Galbraith, and were later by him conveyed to another party by deeds containing no reference to the building restriction. Thereafter defendants in error purchased these lots from the grantees of Galbraith.

The principal question in this case is whether, under the circumstances shown here, defendants in error were bound by the building line restriction in the original deeds. Where there was a general plan or scheme made for the benefit of each purchaser at the time of the purchase, such plan has been enforced between grantees where lots were sold and agreements made with each purchaser as to the building line. We have held that the inference is that the agreements were intended for the common benefit of all the purchasers. That intention is manifested by the character of the transaction, and each may enforce the restrictive agreement against each of the others. *Hays* v. *St. Paul M. E. Church,* 196 Ill. 633; *Childs* v. *Douglas,* 5 DeG., M. & G. 739; *Clark* v. *McGee,* 159 Ill. 518; *Sharp* v. *Ropes,* 110 Mass. 381; *Whatman* v. *Gibson,* 9 Sim. Ch. 196.

Counsel for defendants in error contends that the agreement in each deed was personal to the parties and was not a covenant running with the land; that while the original grantee of the deed was bound by it his grantees would not be. The decision of this question does not depend upon whether the covenant runs with the land. In the leading case of *Tulk* v. *Moxhay,* 2 Phill. Ch. 774, this question is discussed at length. It was there said (p. 776) : "It is now contended, not that the vendee could violate that contract

but that he might sell the piece of land, and that the purchaser from him may violate it without this court having any power to interfere. If that were so it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price in consideration of the assignee being allowed to escape from the liability which he had himself undertaken. That the question does not depend upon whether the covenant runs with the land is evident from this: that if there was a mere agreement and no covenant this court would enforce it against a party purchasing with notice of it, for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." This doctrine as here laid down has been quoted with approval by this court in *Frye v. Partridge*, 82 Ill. 267. The right to enforce this restriction upon the use of the land is based, not upon the agreement made by the subsequent purchaser, but upon the theory that each purchaser buying a lot with notice of a general plan of improvement impliedly assents thereto and can be compelled to comply therewith at the suit of the owner of any other lot, without reference to the order in which the lots were sold. (*Parker* v. *Nightingale*, 6 Allen, 341; 1 Tiffany on Real Prop. sec. 352.) An owner has a right to sell his property upon such terms and conditions as he may think proper, and if the terms are accepted by the grantee and are not objectionable in law

they will be enforced at the suit of the one in whom the right·is vested. If a subsequent owner has taken title with notice, either actual or constructive, of a binding agreement between his grantor and the original owner establishing a building restriction, he will be bound to abide by it and equity will enforce it. (*Hays* v. *St. Paul M. E. Church, supra.*) A court of chancery will recognize and enforce agreements concerning real estate although such agreements are not expressed with technical accuracy; nor is it material that such stipulations should be binding at law or that there should be privity of estate between the parties in order to warrant equitable relief. (*Frye* v. *Partridge, supra; Parker* v. *Nightingale, supra.*) Such building restrictions will be enforced in equity upon equitable principles, each case being considered with reference to its own circumstances. *O'Gallagher* v. *Lockhart,* 263 Ill. 489.

Was this building restriction in the original deed from Galbraith, recorded and shown in the abstract, sufficient to put defendants in error upon inquiry? They are charged with notice of anything showing such restriction which may be shown in a conveyance in the chain of title. (1 Tiffany on Real Prop. sec. 350.) A restriction in a deed very similar to the one here in question has been held to bind successors in title and was enforced against them. (*Winfield* v. *Henning,* 21 N. J. Eq. 188; 2 Devlin on Real Estate,—3d ed.—sec. 940.) Manifestly, there was a general scheme or plan in the sale of these twenty-four lots on Monroe street as to this building line restriction, and the restriction was embodied in each deed to every purchaser. Under the authorities such restriction was intended for the benefit of all the lots, each purchaser being subject thereto and having the benefit thereof. It is not denied that the abstract of the title of defendants in error showed this restriction as to the original deed from Galbraith and that such deed was recorded. These facts, considered in the light of all the other circumstances with reference to the

conveyances of these lots, were such notice to defendants in error as to render the restriction enforcible against them.

It is contended that because the lots of defendants in error had been re-purchased by the original owner after the original deed was executed with this restriction and were a second time transferred by the original owner without any restriction as to this building line, under these circumstances the original restriction would not bind the defendants in error. We do not see how this would in any manner change the legal standing of the parties. Galbraith, when he re-purchased the lots, was in the same position as any other purchaser in the chain of title, and had no power by his second deed to change the effect of his original deed containing this building restriction, executed under the general plan and with the purpose of benefiting the other lots.

Counsel for defendants in error insists that the evidence as to the advertisements, plans, maps and other literature distributed at the time of the lot sale was inadmissible, as it was not shown that Cummings & Co. had authority, as agents, to make any such agreement. The evidence on this subject clearly showed a publicly announced plan as to this building line restriction, and also tended strongly to show that all prospective purchasers would understand that this restriction was placed upon all lots sold. The owner, Galbraith, followed up these public announcements by having inserted in the deeds for all lots sold, this building line restriction. Whether or not he had originally authorized Cummings & Co. to advertise that lots would be sold with this restriction, we think it is clear that he accepted and approved that plan in executing these deeds. Even conceding, however, that this evidence should not have been admitted, there can be no question, from other evidence, that defendants in error had full notice of this building line restriction in the original deeds before they purchased the lots in question.

Counsel for defendants in error further insists there has been sufficient change in the character of the neighborhood to warrant the court in holding that it would be inequitable to enforce now the restriction as to this building line. At the time of the original sale of said lots by Galbraith they were outside of the improved and settled territory of Chicago, only a few scattered houses having been built in that vicinity, but there has been much building in that neighborhood since then, and the property is within the city. Monroe street in this block is residence property. Forty-eighth (now Cicero) avenue crosses Monroe street immediately west and adjoining the block in which these lots are located, one of the lots of defendants in error being on the corner of Monroe street and Cicero avenue. There is an electric line upon this last named street, and it is a semi-business street in this locality. From the stipulation of the facts it appears that this building restriction has been observed on Monroe and other streets in the subdivision with possibly one exception,—a block north on Madison street and Cicero avenue. Equity will not, as a rule, enforce a building restriction where by the acts of the grantor who imposed it or of those who derive title under him, the property, and that in the vicinity, has so changed its character and environment and the use to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced. (*Ewartsen* v. *Gerstenberg,* 186 Ill. 344.) But the character and condition of the adjoining property must have been so changed as to render the building restriction inapplicable according to the intent and spirit of the contract. (*Star Brewery Co.* v. *Primas,* 163 Ill. 652; see, also, *Turney* v. *Shriver,* 269 id. 164.) We do not think that the proof shows that there have been any such changes as to the character of the neighborhood as to estop plaintiffs in error from enjoining the contemplated improvement in so far as it violates this building line restriction heretofore created as to the lots of defendants in error.

The decree of the superior court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*