## Lena M. Gilmore, Appellee, v. John W. Keogh, Appellant.

### Gen. No. 30,641.

1. BUILDINGS AND BUILDING RESTRICTIONS—*change in character and environment of neighborhood as ground for refusing enforcement of restrictive covenants affecting buildings.* Restrictive covenants respecting buildings will not be enforced where the property and neighborhood have, since the making of such agreements, so changed in character and environment that either the object of the restrictions could not be accomplished by their enforcement, or by reason of such change it would be inequitable and oppressive to enforce them.

2. BUILDINGS AND BUILDING RESTRICTIONS—*hardship upon owner and want of benefit to complainant as ground for refusing enforcement of covenant.* Equity will not enforce a building restriction, as a rule, where to grant the relief would be a great hardship upon the owner and of no benefit to the complainant.

3. BUILDINGS AND BUILDING RESTRICTIONS—*assumed public interest in maintenance of private building restriction as basis for enforcement of covenant at suit of former lot owner.* Equity will not enforce an agreement among lot owners establishing a building line restriction for such lots, at the suit of a former owner of one of such lots, who was a party to such agreement, against his grantee, upon the theory that the public acquired a vested easement of unobstructed light by such agreement, where it is manifest from the terms of the agreement that the sole moving consideration for such agreement was the benefit thereby expected to accrue to the lot owners themselves.

4. BUILDINGS AND BUILDING RESTRICTIONS—*acquisition of property at low price because of restrictive covenant as ground for enforcement of covenant against purchaser who will profit by its abrogation.* Equity will not decree the enforcement of a restrictive covenant affecting a lot, at the suit of a former owner thereof who was a party to such covenant, against a subsequent grantee thereof, upon the ground that it would be inequitable to permit such grantee to acquire the property at a less value because it is subject to the restriction and thereafter have the use or disposition of it at full value because unfettered by such covenant, where it appears that changes in the character and environment of the neighborhood since the establishment of the restriction are responsible for the termination of its benefit to the property.

Appeal by defendant from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed May 25, 1926. Rehearing denied June 7, 1926.

GANN, SECORD & STEAD, for appellant; LOY N. MCINTOSH and MACK C. WYLIE, of counsel.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is a suit in equity. Defendant filed a general demurrer to the bill of complaint, which was overruled. He elected to stand by the same and a decree was entered in accordance with the allegations and prayer of the bill declaring an agreement for a building line of property owned by complainant to be void, and canceling and removing the same as a cloud upon the title to complainant's property.

Complainant's property consists of two lots at the northeast corner of Sheridan Road and Eastwood Avenue, Chicago, the title to which is vested in complainant by mesne conveyances from defendant. With two other lots north of them they cover the entire frontage on the east side of Sheridan Road between Eastwood Avenue on the south and Leland Avenue on the north. On August 31, 1896, all said lots became the subject of agreement between the then several owners thereof, one of whom was defendant, whereby they agreed for themselves, their respective heirs, administrators, executors and assigns, upon a building line on said lots 15 feet back of the street line. The agreement recites that it would be for their mutual benefit and the benefit of said lots to preserve a clear and unobstructed view up and down said boulevard by the establishment of a uniform building line and by having the buildings

erected on said lots "removed from close proximity from the noise and dust of the street."

It appears from the allegations of the bill that these lots were then in a residential district devoted exclusively to residence purposes, and in most instances to single dwelling houses intended for use and occupation as such by single families.

On April 26, 1921, the titles to said lots were vested respectively in three persons, including complainant, who then entered into an agreement abrogating and setting aside such building line, the agreement reciting that since the agreement of August 31, 1896, the said lands have become suitable and are partly used for business and mercantile purposes. These agreements are set up in the bill, and the bill further alleges that when the agreement of abrogation was entered into the character of Sheridan Road north and south of complainant's premises, and on the west side of Sheridan Road had "so changed that the same was no longer used exclusively for residence purposes, and particularly not for single dwelling houses intended to be used and occupied by single families, but was used primarily for retail businesses of various kinds, including restaurants, shops, and also for large apartment and hotel buildings housing large numbers of persons, many of which said buildings used for the housing of persons contained stores and shops on the street level or first floor thereof," and said agreement was entered into for the purpose of permitting the then owners of said premises to make the best and most advantageous use of their respective property as could be made under the existing circumstances.

While the main walls of the buildings on complainant's lots conform to said building line, the walls of the buildings on the other lots included in said agreements extend to the street line. The bill alleges that no suit has ever been brought by defendant against the owners of said buildings, and he has refused to bring

suit against complainant or any other person to enforce such restrictive agreement, but in order to annoy and vex complainant, claims to be entitled to enforce the same.

On the bill taken as confessed, and on the hearing of testimony sustaining the allegation as to the changed character of the locality the court found that the restrictive agreement is a cloud upon the title of complainant's premises and tends to depreciate the value and sale thereof, and has been abrogated by the agreement of April 26, 1921.

It is unnecessary to consider the effect of the abrogation agreement if regardless of it the restrictive agreement is a cloud upon the title, which perhaps may be so deemed if it gives color to defendant's claim of right to enforce it. His demurrer admits he claims such right, and his argument in this court is predicated thereon.

But while appellant urges that the restrictive agreement is binding between him as the original grantor of the property in question and subsequent owners (citing *Hays v. St. Paul Methodist Episcopal Church,* 196 Ill. 633, and *Van Sant v. Rose,* 260 Ill. 401), and may be enforced by each grantee against the other (citing *Dick v. Goldberg,* 295 Ill. 86), and on the other hand appellee urges that appellant has no interest in the enforcement of the restriction, we think neither contention need be discussed, if, as also urged by appellee, a change in the character of the neighborhood has made it impossible to accomplish the purposes sought to be achieved by the restriction, and thereby imposes a burden on the property, depreciating its value without any corresponding benefit.

It is manifest from the facts set forth in the bill that the purposes sought to be accomplished by the restrictive agreement contemplated as a primary consideration that the locality remain what it was then, a purely residential district for single dwelling houses. In such

case, construction of the buildings back from the street line afforded the manifest advantages of a more open view up and down the street and a removal further back from noise and dirt. These were the avowed purposes of the agreement. But it appears that now the entire street is changed in character and uses of property along it so as to render the property in question wholly undesirable and unsalable at its real value for single dwelling houses; that all along the street, north and south of the property in question and on the west side of the street, apartment and business buildings have been erected to the street line and many of them devoted to businesses of various kinds, and that the character of the neighborhood has so changed as to frustrate, if not absolutely defeat, the purposes of such restrictive agreement, thus rendering it a burden on the property and such as greatly limits its use and depreciates its value. While the other property included in the agreement has also been built up to the street line in disregard of the restrictions, probably as a result of the abrogation agreement into which appellee entered, yet the change in the character of the street manifestly affected the entire block thus rendering the abrogation agreement advisable.

But we need not discuss the effect of the abrogation agreement, for regardless thereof the cases are numerous recognizing the rule that restrictive covenants will not be enforced where the property and neighborhood have, since the making of the restrictive agreement, so changed in character and environment that either the object of the restrictions could not be accomplished by their enforcement or by reason of such change it would be inequitable and oppressive to enforce them. See *Van Sant v. Rose, supra,* p. 414, and cases there cited. This well supported rule appellant does not undertake to question but contends that there is neither averment nor proof that the changed conditions were the result of any acts of ap-

pellant or his grantees, citing what was said on that subject in *Star Brewery Co. v. Primas,* 163 Ill. 660. But it was also said in that case:

"Where the change in the condition of the surrounding property is such that a performance of the covenant in the deed would injure the grantee's property, or make it yield less profit, or make it incapable of yielding any profit, the covenant will not be enforced as being unreasonable and oppressive. * * *" (Citing cases in other jurisdictions.)

It is also said in *Ewertsen v. Gerstenberg,* 186 Ill. 344, that equity will not, as a rule, enforce a restriction, where to grant the relief would be a great hardship on the owner and of no benefit to the complainant. In the absence of a reversionary interest or an obligation to maintain the restriction, or of the possession or ownership of other property affected by the abrogation of the restriction, it is not apparent how enforcement of the restriction would benefit defendant.

Defendant also urges that in creating the restriction appellant created an easement of unobstructed light not only for his own benefit and his adjacent land owners but for the public at large, and that the public had become entitled to a vested easement in the restricted area of the lots in question, quoting language to that effect from *O'Gallagher v. Lockhart,* 263 Ill. 489, 495. In *Loomis v. Collins,* 272 Ill. 221, which is also a case involving a building line restriction, the court said:

"It is fundamental that the parties seeking to enforce such an easement must have some right and interest in its observance by those against whom they seek to enforce it. * * * Restrictions upon the use of property are not favored in law, and where the right to enforce them is doubtful the doubt will be resolved against the restrictions." (Citations.)

The court there held that where it is not clear that

it was intended that the building line restrictions on lots fronting on one avenue were intended for the benefit of all the lots fronting on the other avenues, the doubt would be resolved against the restrictions. We do not think it can be said that under the circumstances and facts of the present case any enforcible easement in behalf of the public was created. The restriction was manifestly created solely for the benefit of the adjoining lot owners in that block to obtain a better view of the street and greater security to house dwellers from noise and dirt, and not more light for them or the public.

Appellant also cites cases to the effect that it would be inequitable for a party to take property at a less price because it is subject to a restriction, and receive full value from a third party, and the latter be unfettered by the restriction. There are no facts in this case to which that principle is applicable. In fact it may be inferred that the property was rendered more valuable by the restriction as long as it continued to remain purely residence property devoted to use for single dwelling houses.

While it does not appear that defendant has any right of reverter or that he is obligated by any covenant to subsequent owners to maintain such restriction, and it is, at least, doubtful whether he has any interest that would entitle him to the enforcement of the restriction, yet for the reasons stated regarding the changed conditions since the restrictive agreement was entered into we think the decree should be affirmed.

*Affirmed.*

Gridley and Fitch, JJ., concur.