HUBER *v.* GUGLIELMI ET AL.

(Decided February 15, 1928.)

Mr. *D. R. Hertz,* for plaintiff.
Mr. *Victor S. Leanza,* for defendants.

MAUCK, J. Harry Huber brings this action to enjoin the defendant Frank Guglielmi from violating covenants restricting the use of a lot of which Guglielmi has taken possession under a contract of purchase. Huber is the owner of sublot 29 in the

Wigmore Company's Cedar Brook allotment, and Guglielmi holds the adjoining lot, No. 28, under a contract of purchase from Etta Oyster, although the legal title is still in the name of Etta Oyster. Guglielmi is about to move and place on lot 28 an old house which he has bought. The two lots in question are among 586 lots laid out by the Wigmore Company. That company, after it had disposed of about half of the allotment, contracted the remaining lots to the Rapid Transit Land Company, for sale by the latter company. That company would make contracts of sale with purchasers of the various lots, and, when such purchasers became entitled to conveyances, would cause a deed to be made to one of the Rapid Transit's subsidiaries, which subsidiary would make conveyance to the purchaser. Both the Huber lot and the Guglielmi lot came from the Cedar Heights Land Company, one of such subsidiaries. In the deeds to both lots 28 and 29 appears the restriction upon which the rights of the parties herein depend. Without quoting all that restriction, it is to be observed that it recites that *all lots* in the subdivision should be used exclusively for residence purposes, except certain mentioned lots, and neither lot 28 nor 29 is among the exceptions. So that both deeds carry notice that both these lots are residential lots. Among the particular restrictions that are then applied to residential property is this:

"No building of any kind shall be moved upon said premises and no building shall be constructed upon said premises that shall contain secondhand material, * * * but the said dwelling house shall

be placed not more than three feet from the easterly line of said lot."

The claim is, first, that the covenant does not inure to the benefit of the plaintiff, Huber, or any other lot owner, because it does not clearly appear in the covenant that it was made for the benefit of such other landowner, and that a like covenant is in other deeds for the benefit of the owner of lot 28. *Kiley* v. *Hall,* 96 Ohio St., 374, 117 N. E., 359, L. R. A., 1918B, 961, is cited in support of this doctrine. In the present case, as in the *Kiley case,* there was no restriction in the dedicatory plat carrying constructive notice to lot purchasers. In the *Kiley case,* however, the restrictive covenant contained no language indicating **anything more than a per**sonal covenant between the grantor and grantee, and contained no hint that the same or similar restrictions affected other lots. In the covenant now under consideration, however, it is clearly indicated that the restrictions run to *all* lots within certain numbers, and it is clear from a reading of the restrictions, as they appear in each of the deeds of the parties hereto, that both lots 28 and 29 are subject to the restriction which Guglielmi is threatening to violate. While the restriction does not in so many words say that lot 28 is restricted for the benefit of lot 29, and *vice versa,* Guglielmi, upon reading the deed under which he claims, was made aware that his lot, and *all* the lots, including the Huber lot, were under the same restrictions, and he could not help knowing that lots 28 and 29, lying side by side, were so restricted for the benefit of each other. The covenant, therefore, does not fall

because of the infirmities pointed out in the covenant under consideration in *Kiley* v. *Hall*.

The defendant further contends that the plaintiff has no rights greater than the latter's grantor, and that such grantor could not have maintained an action on this covenant at any time, because at the particular time the covenant attached to lot 28 the grantor was not the owner of lot 29; that is to say, the covenant was never available to the owner of lot 29 because the title to that lot was not in the immediate covenantee when the latter conveyed lot 28. The authorities differ on the question whether a restriction can be enforced by the grantor if he should at the time not own adjacent property to be benefited thereby. This difference arises from an attempt to fix some underlying legal principle, sanctioned by antiquity, supporting restrictive covenants generally, and to compel an action on such covenants to conform to such principle. In *Van Sant* v. *Rose,* 260 Ill., 401, 103 N. E., 194, 49 L. R. A. (N. S.), 186, the Supreme Court of Illinois committed itself to the doctrine that such restriction might be enforced by the grantor notwithstanding the fact that he owned no land in the vicinity. Mr. Justice Stone, then Prof. Stone, in 18 Columbia Law Review, at page 313, in the most learned analysis of such covenants we have ever seen, commends that holding. He says:

"And this, it is submitted, is the view which should prevail. There is no reason why equity, which has made a distinct advance over the rules of property recognizing that equitable rights *in personam* are themselves a species of property worthy of protection, should set limits upon the

protection which it affords, by analogy to rules of property developed before Sir Edward Coke's time and which it has actually to some extent supplanted. If the plaintiff has an equitable right on his covenant, that is, one which equity will enforce by compelling the covenantor to perform; if the injury to plaintiff is equally great and the act of the defendant is equally unconscientious, as in the case where a specific performance would give the plaintiff a property right—then equity should not deny relief merely because the result of a specific performance does not fall within one of the categories of property recognized as such by the courts of law.''

In other words, a covenant solemnly entered into and scrupulously adhered to by one party is enforceable by such party in equity, and such right will not be defeated by a quibble over the terms ''easement'' and ''servitude'' and by the cast-iron fetters that anciently applied to those terms.

In the instant case, under the doctrine set forth in the quotation, the Cedar Heights Land Company, owned by the Rapid Transit Company, with deeds outstanding purporting to restrict lot 29, and a possible personal liability thereunder, and with other lots under contract which contained similar covenants, clearly could maintain an action to enjoin the plaintiff if he were threatening to violate his covenant, and the plaintiff had the correlative right to enjoin the land company from a like violation the moment it acquired lot 28, and the land company would be estopped from taking refuge in the fact that it had no title to lot 28 when it made the deed for lot 29. The estoppel of the grantor

runs against the grantee. *Cleveland Baptist Association* v. *Scovil,* 107 Ohio St., 67, 140 N. E., 647.

This defense is too technical to be attractive to a court of equity. It seems more like an excuse for violating a covenant than a sound reason for setting aside such an obligation. Other authorities illustrating the more liberal and modern trend may be found in the note in 21 A. L. R., 1281. This precise question was before the Chancery Court of New Jersey in *Schmidt* v. *Palisade Supply Co.,* 84 A., 807. That court speaking through as great a chancellor as Garrison held:

"Where an owner of land projects a definite building scheme, and includes in his project land to which he has not title, but which he subsequently acquires and conveys with restrictions, the purchasers of the land originally owned may sue in equity to enforce the restrictions as against the purchasers of the subsequently acquired land."

This doctrine was followed with approval by the Court of Civil Appeals of Texas in *Gordon* v. *Hoencke,* 253 S. W., 629.

Our conclusion is that there is no reason why this covenant, made for the benefit of the plaintiff, and paid for by him, should not be enforced for his protection.

*Decree for plaintiff.*

MIDDLETON, P. J., and THOMAS, J., concur.

Judges MIDDLETON, MAUCK and THOMAS, of the Fourth Appellate District, sitting in place of Judges SULLIVAN, VICKERY and LEVINE, of the Eighth Appellate District.