BERTHA C. LOOMIS *et al.* Appellees, *vs.* THOMAS A. COLLINS, Appellant.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. BUILDING LINES—*two methods of creating restrictions upon use of property by purchaser.* Restrictions upon the use of property by a purchaser may be created either by express covenants contained in the deed or by a recorded plat of a subdivision upon which is noted a building line and with reference to which the lots are purchased.

2. SAME—*the two objects of building line restrictions.* The two objects of building line restrictions are to secure unobstructed light, air and vision for the lots for whose benefit the restrictions are created and to secure uniformity in the location of buildings with respect to the street line.

3. SAME—*when plat showing a building line creates an easement.* Where the plat of a subdivision of land into blocks, lots and streets shows a building line, a purchaser of a lot in reliance upon the plat and in the absence of restrictions in the deed takes it burdened with an easement in favor of other lots for whose benefit the building line was established or created.

4. SAME—*when an easement as to building line shown on plat may be revoked.* The designation of a building line upon a plat creates an easement for the benefit of property upon the street,

but the same may be revoked before the property has been conveyed with reference thereto.

5. SAME—*when purchasers cannot be said to have relied upon the plat.* Where the proprietor of a subdivision, the plat of which shows a building line on all streets and avenues, inserts in the deeds to the lots sold by him building restrictions which are confined to the street or avenue on which the lots so sold abut, the purchasers cannot be said to have relied upon the plat, and their rights with reference to requiring observance of restrictions by owners of other lots are measured by their deeds.

6. SAME—*what must be shown by party seeking to enforce an easement as to building line.* Parties seeking to enforce an easement as to a building line must have some clear right and interest in its observance and it must have been created for their benefit, individually or in connection with others.

7. SAME—*restrictions upon the use of property not favored in law.* Restrictions upon the use of property are not favored in law, and where the right to enforce them is doubtful the doubt will be resolved against the restrictions.

8. SAME—*what may deprive complainants of right to insist on observance of building line.* Complainants' disregard of the building line on their own lots may either deprive them of the right to insist upon its observance by owners of lots fronting other streets, or render their right to enforce the restriction so doubtful that equity will not lend its aid.

9. SAME—*when court will consider inconvenience and damage to the defendant.* In a proceeding to enforce a building line restriction a court of equity will give some consideration to the inconvenience and damage that will result to the defendant as well as the benefits that will accrue to the complainants.

10. SAME—*rule as to consideration of damage to defendant.* A consideration of the inconvenience and damage to the defendant from the enforcement of a building line restriction will not justify a refusal to grant the relief if the right of the complainants is clear and undoubted, but it affords strong ground for denying relief where the right is doubtful and serious consequences will result to the defendant with little or no corresponding benefit to the complainants.

11. SAME—*when purchaser is not bound by advertisements by owner or agent.* If the only restriction shown on a plat of a subdivision is a building line, and the restrictions contained in deeds to property already sold are limited to lots on the street on which the lots sold abut, the purchaser of a lot on a street on which no other lots have been sold is not bound by advertisements of the

owner or agent with reference to the character of the buildings which will be permitted, where he knew nothing about such advertisements. (*Maywood Co.* v. *Village of Maywood*, 118 Ill. 61, distinguished.)

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

CHARLES L. BARTLETT, SHERMAN C. SPITZER, ROBERT HUMPHREY, and EDWARD J. McARDLE, for appellant.

RICHARDS, VOIGT & DARBY, (JOHN F. VOIGT, of counsel,) for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county awarding a mandatory injunction against defendant, Thomas A. Collins, commanding him to remove or alter, in the manner directed by the decree, the front part of a flat or apartment building in process of construction by him on lot 7 and the north twenty feet of lot 8, block 9, Jackson Park Highlands subdivision, in Cook county, Illinois. The mandatory injunction was awarded upon the ground that there was a building line restriction which prohibited any building being placed nearer the street line than thirty feet. Collins has appealed from that decree to this court. The parties will be referred to as complainants and defendant.

Jackson Park Highlands is a subdivision of the east half of the southwest quarter of section 24, town 38, north, range 14, east of the third principal meridian, Cook county, Illinois. It is immediately south of Jackson Park and lies between Sixty-seventh street on the north and Seventy-first street on the south. The land was purchased, subdivided and platted by a syndicate composed of Frank I. Bennett, George Bennett, Clyde L. Day, Edward P. Skene, Samuel

G. Hatch, Francis B. Bowes, Luther W. Conover, Charles J. Bour, Frank B. Harriman and George C. Bour. The plat was filed for record in the recorder's office August 3, 1905, and for convenience in conveying the lots to purchasers the title to all of the subdivision was conveyed to the State Bank of Chicago as trustee for the syndicate, which was unincorporated. All deeds conveying lots in the subdivision have been executed by the bank as trustee, but the active agents in selling and improving the property were the members of the syndicate, or some of them. The avenues of said subdivision as platted are, from east to west, Jeffery, Euclid, Bennett, Constance and Cregier. Across the front part of all the lots in said subdivision as shown by the plat, and a little way back from the street lines, are dotted lines, just above each of which is written, "Building line 30 ft. back from street line." The first improvement made in the subdivision after it was platted and before any lots were sold to purchasers was the building of twenty houses by the trustee upon lots fronting Euclid avenue. These houses and lots were afterwards sold to various purchasers and some vacant lots fronting Euclid avenue were sold. The first deed made of any lot in the subdivision fronted Euclid avenue and was to Mrs. Anna M. Pattillo, and contained the following provision: "It is understood and agreed as a part of the consideration above expressed that no flat-building or apartment house, or any building other than a private dwelling house such as is usually designed and built for the use and occupancy of a single family, shall for a period of twenty-five years from May 1, 1906, be constructed or placed on said premises; that no dwelling house shall be constructed or placed on said premises at a cost of less than $5000; that no building shall be constructed on the east thirty feet of said premises, (however, private barn and usual out-buildings for the use of the occupants of such dwelling may be erected on the west thirty feet of said lot 5.) * * * And the grantor here-

in covenants and agrees that all deeds that shall be given for lots fronting on Euclid avenue (except the south two hundred feet thereof) in said subdivision shall contain provisions as to building restrictions and the use of said premises, substantially similar to those contained herein." This is now the property of complainant Walter. At a period of about two years later the trustee built fourteen houses fronting on Bennett avenue and began selling them and vacant lots fronting on the same avenue. Still later about two years the trustee built nineteen houses fronting Constance avenue and began selling them and vacant lots fronting said avenue. At the time of filing the original bill, April 5, 1915, eighty-seven houses had been built in the subdivision on lots fronting Euclid, Bennett and Constance avenues. No lots had been sold in the subdivision fronting Jeffery avenue until the sale to defendant, Collins, on November 24, 1914, of lot 7 and the north twenty feet of lot 8, block 9, and no houses had been built on the lots of the subdivision fronting Jeffery avenue. All of the deeds to purchasers of lots fronting Euclid, Bennett and Constance avenues contained substantially the same conditions contained in the deed to Mrs. Pattillo, except that the deeds to lots fronting Constance avenue excepted from the building line restriction, in addition to the south two hundred feet, also the north one hundred feet on said avenue. The deed to defendant, Collins, contained the following provisions: "It is understood and agreed as a part of the consideration above expressed, that no building shall be constructed or placed on the east thirty (30) feet of said premises, provided, however, that porches, sun porches and steps may extend to a point twenty (20) feet west of the east line of said premises. And in consideration of the acceptance of this instrument it is agreed that the grantor herein shall not convey any of lots one (1) to twelve (12), inclusive, in block nine (9), or any part or parts thereof, in the subdivision aforesaid, without inserting in the conveyance

272 – 15

thereof a building line restriction similar to the one herein inserted." On March 6, 1915, defendant, Collins, began excavating for a three-story flat or apartment building on his lots, and on March 15 began the erection of the building. He had constructed it up to the third floor joists at the time the bill was filed, April 5, 1915. The wall of the main building did not extend beyond a line thirty feet back from the east lot line, but in connection with the building and as a part of the front Collins was constructing two sun porches which extended east from the main building eight and one-half feet, leaving twenty-one and one-half feet between the east line of the sun porches and the street line.

The complainants in the bill are Bertha C. Loomis, Blanche E. Gillies, Charles E. Walker, Mary A. Walker, Charles Gross, Mary R. Bohnen, Joseph R. Bohnen, Clare L. Frame, Elizabeth R. Armstrong, Carrie M. Weil, Luther M. Walter, John S. Baxter and Agnes B. Baxter, and are the owners of dwelling houses facing Euclid avenue on the east and west sides thereof. The bill alleges said avenue is a fine residence avenue and that there are no flat or apartment buildings thereon but that it is improved with dwelling houses only; that a map or plat of the subdivision, called Jackson Park Highlands, was filed in the recorder's office August 3, 1905, and shows a building line on Jeffery avenue thirty feet back from the street line, which is a restriction upon the owners and their grantees erecting any building upon the east thirty feet of all the lots fronting Jeffery avenue; that Jackson Park Highlands included all the lots and land extending from ,Sixty-seventh street on the north to Seventy-first street on the south and from Cregier avenue on the west to Jeffery avenue on the east. The bill alleges there are no completed buildings fronting Jeffery avenue and that there is no flat or apartment building in the subdivision, and that purchasers of lots in said subdivision since August 3, 1905, have relied upon the plat showing building line restrictions; that complainants were

informed by agents of the owners of premises purchased by them that the subdivision was restricted to high-grade residences and that no. flat or apartment buildings would be built therein. The bill then alleges that defendant, Collins, is erecting a six-flat building, three stories high, sixty feet wide and about ninety feet deep, fronting Jeffery avenue, and is extending the building ten feet east of the building line on the lot shown by said plat; that said building line restriction in said subdivision has not been generally violated, and that the acts of Collins complained of will result in great and irreparable injury to complainants' premises and to all the owners of lots in said subdivision; that they will be deprived of light, air and vision, in violation of their rights under said plat and the representations made complainants in the purchase of their respective premises, unless the said Collins be restrained by injunction from proceeding with the erection of said flat-building, or any part of it, within the restricted area. The bill prays that Collins be restrained from encroaching upon the building line established by the plat and that he be required to remove the obstructions from the building line. By an amendment to the amended bill it was alleged that the parties composing the syndicate who platted the subdivision, (naming them,) adopted a general plan and scheme for its improvement, which scheme provided, among other things, that no flat or apartment buildings should be constructed in said subdivision but that it be restricted exclusively to dwelling houses such as are usually occupied by one family, and that each lot should have a building line across the front thirty feet back from the street line; that the owners of the subdivision appointed Frank I. Bennett, George Bennett and George C. Bour, who were members of the syndicate, agents to sell lots in said subdivision; that said agents advertised the sale of lots extensively and represented to prospective purchasers that the subdivision was restricted to residences and dwelling houses and that flats and apartment buildings

could not be erected in said subdivision, and that complainants relied upon such representations in purchasing lots.

The answer is very voluminous and in separate paragraphs describes the improvements on the lots facing Euclid and Bennett avenues and the location of the buildings with reference to the building line. It denies the buildings were constructed with reference to said building line, and avers that out of thirty houses fronting Euclid avenue built by the trustee prior to the sale of any lots in the subdivision, twenty of them were not constructed with regard to the building line, and that most of the houses fronting upon Euclid avenue built by persons other than the trustee were constructed without regard to said building line. The answer sets out *in hæc verba* the deed from the trustee to defendant, Collins, containing the condition that no building should be constructed on the east thirty feet of the premises, "provided, however, that porches, sun porches and steps may extend to a point twenty (20) feet west of the east line of said premises." The deed contained a covenant that the grantor would not convey any lot or parts of lots fronting Jeffery avenue, in block 9, without inserting in the conveyance a building restriction similar to that in the deed to Collins. The answer denies the building line has been observed in erecting houses fronting on Euclid avenue, and alleges that it has been disregarded in such manner as to show an intention to abandon it, and denies that complainants are entitled to the relief prayed or any part thereof.

The cause was tried before the chancellor, and the decree finds when Collins purchased his property it was represented to him by the owners that no conveyance had been made of any lot fronting Jeffery avenue; that the only restrictions against the use of the property conveyed to Collins were those contained in the deed; that Collins believed these representations and acted upon them in purchasing the lot and constructing the building thereon, but that before he purchased his lot a plat made by the owners had

been recorded showing building lines thirty feet from the street lines of said lots, and that this was constructive notice to Collins of the existence of the building line and the easement thereby created. The decree finds building the sun porches according to the plan and design upon which they were being constructed was a violation of the building line restriction; that Collins had the right to build and maintain sun porches extending over the building line shown by the plat but not of the type he was constructing, and the decree particularly described the character of porches he could construct. The decree found it was not true, as alleged in the amended bill, that the building line restriction shown on the plat had not been violated on Euclid avenue or in said subdivision, nor was it true, as alleged, that all the porches built to houses in said subdivision were open porches and did not obstruct light, air or view from other property; that eighty-seven houses had been built in said subdivision upon divers lots, and with the exception of three of them have covered porches extending over the building line from two to twelve feet; that fifteen of said porches are enclosed with sash and glass, that all of them are screened in during warm weather, and that six of said houses have bay windows extending over said line a distance varying from one foot nine inches to three feet nine inches. The decree further finds that no great and irreparable injury will accrue to complainants by reason of Collins erecting an apartment building with sun porches projecting eight and one-half feet over the building line, and that the damage will not be serious. The injunction awarded did not restrain defendant, Collins, from proceeding to complete the apartment building if he would remove the sun porches or alter them in compliance with the decree.

There are two methods of creating restrictions upon the use of property by a purchaser. One is by express covenants contained in the deed, and the other is by a recorded plat of a subdivision upon which is noted a building line and

a purchaser buys lots with reference to the plat. In this case there is no question of the violation of restrictive covenants in the deed to defendant, Collins. The grounds upon which complainants base their right to relief are, that the building lines shown by the plat upon all the lots fronting all the north and south avenues in Jackson Park Highlands subdivision were for the benefit of all the lots in said subdivision and gave the purchaser of a lot fronting one street a right to enforce the building line restriction upon all the lots in the subdivision. The two objects of a building line restriction are to secure unobstructed light, air and vision for the lots for whose benefit the restriction is created, and to secure uniformity in the location of buildings with respect to the street line for the accomplishment of that object. (*O'Gallagher* v. *Lockhart,* 263 Ill. 489.) Where the plat of a subdivision of land into blocks, lots and streets shows a building line, a purchaser of a lot according to the plat and without restrictions in the deed takes it burdened with the easement in favor of other lots for whose benefit the building line was established or created. The questions here for determination are: (1) Did the building line shown upon the plat create an easement in the front thirty feet of the lots facing Jeffery avenue in favor of owners of property facing Euclid and Bennett avenues? And (2) if such easement was created, are complainants, owners of property fronting on said Euclid and Bennett avenues, now in a position to enforce the same?

As will be remembered, the plat of this subdivision on record showed by a dotted line a thirty-foot building line on the lots fronting the five north and south avenues. The deed conveying the first lot sold in this subdivision to Mrs. Pattillo, which faced Euclid avenue and the terms of which are before set out, contained several covenants, some on the part of the grantor and some on the part of grantee. One of grantee's covenants was that no building should be erected on the front thirty feet of the lot purchased by her.

One of grantor's covenants was that deeds for lots facing Euclid avenue, in said subdivision, "shall contain provisions as to building restrictions and the use of said premises, substantially similar to those contained herein." It will be seen the covenants in this deed with reference to building restrictions are limited to lots fronting on Euclid avenue. Subsequent deeds to lots fronting said avenue are similar to and contain like restrictions to those in the Pattillo deed. After the plat of this subdivision was filed there can be no question but that the plattors, before the sale of any of the lots, could have changed the building line restrictions shown. True, the designation of a building line upon a plat creates an easement for the benefit of property fronting upon the street, (*Simpson* v. *Mikkelsen,* 196 Ill. 575,) but, like a street dedicated to the public by statutory dedication, the same may be revoked before acceptance by the public or before property has been conveyed with reference thereto, or, as held in *Eckhart* v. *Irons,* 128 Ill. 568, where a grantor in his deed modifies or limits the scope or duration of the building line restriction as shown by the plat, then the modification in the deed governs. Here, while the plat of the subdivision showed the thirty-foot building line restriction on all the north and south avenues, the covenants with reference to the restriction in the deeds to property on the several avenues were limited to the property on the same avenue where the lot conveyed was located. In other words, the covenant in the deeds to lots sold on Euclid avenue was only that other lots sold on the same avenue,— not in the entire subdivision,—should contain similar covenants. These deeds were contracts between the parties, having effect not only to pass title but to establish other relations and conditions. One of these conditions was with reference to a building line on the lots conveyed and other lots on the same avenue. The plat on record, which indicated a building line on each avenue, was seemingly abandoned, or at least not relied upon, for the location of build-

ing lines was made the subject of contract and embraced in the deeds.

It is fundamental that the parties seeking to enforce such an easement must have some right and interest in its observance by those against whom they seek to enforce it. It must have been created for their benefit, individually or in connection with others. The right or interest that will enable the party to enforce the easement must be clear. Restrictions upon the use of property are not favored in law, and where the right to enforce them is doubtful the doubt will be resolved against the restrictions. (*Curtis* v. *Rubin*, 244 Ill. 88; *Eckhart* v. *Irons, supra; Hutchinson* v. *Ulrich*, 145 Ill. 336.) In the first place, it does not seem reasonable that the platting of a building line on lots fronting Jeffery avenue was intended for the benefit of all the lots fronting the other avenues in the subdivision. The disregard of the building line on Jeffery avenue would not affect the light, air or vision of lots fronting other avenues, nor their uniformity with reference to the location of buildings on such other avenues. At all events, it is not clear that it was intended the building line restrictions on lots fronting one avenue were intended for the benefit of all the lots fronting other avenues, and in such case the doubt must be resolved against the restrictions. We are further of opinion that complainants cannot rely upon the plat as a basis of their right to enforce the observance of the building line on lots fronting avenues other than the one upon which their lots front. It does not appear that such was in their contemplation when they purchased property, for the building line shown on the plat is not referred to, but their deeds create building line restrictions limited to the lots fronting the same avenue and contain covenants that all other deeds made to lots fronting the same avenue should contain similar restrictions. This appears to us to recognize that the building line on lots fronting other avenues

was not intended for the benefit of the lots fronting Euclid and Bennett avenues.

It is insisted by complainants that the owners of the subdivision and their agents verbally and by printed advertisements represented they had adopted a general plan or scheme for the improvement of the property or subdivision, including building line restrictions on all lots in the subdivision, for the common benefit of all purchasers, and on this ground complainants are authorized to enforce the restrictions on every lot in the subdivision. The situation here presented is not analogous to that considered in *Maywood Co.* v. *Village of Maywood,* 118 Ill. 61, relied on by complainants. In that case the owner, the Maywood Company, platted the village of Maywood into blocks, lots and streets, reserving a sixteen-acre tract in the village, designated as Maywood Park. The park was made a feature of extensive advertising by the company for the sale of lots, and the abstracts of title furnished purchasers contained copies of the plat showing the property designated Maywood Park. More than four hundred persons were induced to buy lots and locate in the village, and for over ten years the park was used by the residents for public purposes. It was held the intention of the Maywood Company to dedicate the tract for a public park was clear and that it was now estopped from revoking the dedication. The plat here showed no plan of improvement other than the building lines, and Collins testified he knew nothing about the advertisement by the owners; that he bought his property through the Bennetts for the purpose of erecting a flat or apartment building thereon; that he so informed them and was told he could do so; that he told the Bennetts he would have to build sun porches, and could not get the building, together with the sun porches, all back of the building line. The deed gave him permission to extend sun porches and steps ten feet beyond the building line. While the owners were made parties defendant to the bill, Collins is the only

one affected by the relief asked and the bill was dismissed as to the other defendants by the chancellor. We think the *Maywood case* and *Smith* v. *Heath,* 102 Ill. 130, have no application to this case.

Complainants and others who have bought lots in the subdivision and built houses on other avenues than Jeffery have not themselves strictly observed the building line as shown on the plat. Of eighty-seven houses built in the subdivision all but three have covered porches extending over the building line from two to twelve feet. Fifteen of these porches are enclosed with sash and glass and all of them are screened in during warm weather. Six houses have bay windows extending over the line from one foot nine inches to three feet nine inches. Some of the porches are two stories high, and in the construction of a number of porches massive columns or clusters of columns were used for their support, some of the columns being of wood and some of brick or stone and range in diameter to as much as twenty or thirty inches. Parts of the sides and fronts of a number of the porches are enclosed with brick, cement, or solid, opaque building material. The decree finds that complainants have not strictly regarded the building line, and recognizes that they cannot complain of its disregard by Collins to as great an extent as they have disregarded it but that they may insist he shall not do so to a greater degree than they have. The decree permits the porches to extend over the line the distance planned by Collins,—eight feet six inches,—by changing the plan so as to use fewer brick in their construction and make them more like complainants' porches, and unless he conforms to the plan specified in the decree he is ordered to remove the porches entirely. The difference in Collins' structure extending over the building line in the obstruction of light, air and vision from other lots facing the same avenue, and complainants' structures extending over the building line on Euclid and Bennett avenues, is in degree, only, if there is

any difference. If it was originally intended that the build-
ing line platted on the lots fronting one street was for the
benefit of all the lots in the subdivision facing other streets,
complainants' disregard of the line on their lots either de-
prives them of the right to insist upon its observance on
lots fronting other streets or renders their right to enforce
the restriction so doubtful that equity will not lend its aid.
(*Kneip* v. *Schroeder,* 255 Ill. 621 ; *Curtis* v. *Rubin, supra.*)
We are not to be understood as holding that a partial
abandonment or disregard of a building line restriction by
owners of a part of the lots for whose benefit the restriction
was created will necessarily operate as an abandonment al-
together where a material and beneficial part remains. See
*Ewertsen* v. *Gerstenberg,* 186 Ill. 344.

While a complainant may enforce an express covenant
without proof of damages, (*Hartman* v. *Wells,* 257 Ill.
167; *VanSant* v. *Rose,* 260 id. 401 ;) in the enforcement
of an easement of the character here involved a court of
equity will give some consideration to the inconvenience
and damage that will result to the defendant as well as the
benefits that will accrue to the complainant. (*Lloyd* v. *Cat-
lin Coal Co.* 210 Ill. 460; 1 High on Injunctions, sec. 2.)
Complainants' proof showed the cost of construction of the
sun porches to their present stage, plus the cost of their re-
moval and restoring the front wall without front porches,
would be in the neighborhood of $2000. Defendant tes-
tified the cost of the building as planned would be about
$34,000; that he had already expended in construction and
material on the ground in excess of $11,000. He further
testified that without the sun porches the rental value of
each flat would be reduced from $12 to $15 per month, and
that the removal of the sun porches would reduce the value
of the building about $9000. No attempt was made by the
complainants to prove any damages would result to their
property from the construction of the sun porches on an-
other street which affected neither the complainants' light,

air nor view. Those considerations would not justify a refusal to grant the relief if the right to it were clear and undoubted, but where the right, as here, is at least doubtful, they afford strong grounds for denying a remedy which produces such consequences to the defendant with little or no corresponding benefit to the complainants.

Complainants have assigned cross-errors on the ruling of the court in refusing their motion, during the trial, to dismiss the bill as to all the defendants except Collins, at their costs, for want of equity. The decree dismisses the bill as to all the defendants except Collins on the ground they were not necessary parties, and while that might well have been done on motion of complainants before decree entered, no prejudice resulted to complainants from its denial at the time it was made. They were not proper parties defendant.

Cross-error is also assigned by complainants on the ruling of the court in denying leave to complainants Agnes B. and John S. Baxter to file an amendment to the amended bill. The amendment is not preserved. Its allowance was within the sound discretion of the court, and while the amendment is not before us, it is apparent, we think, under the pleadings, all the complainants had the benefit of every fact and circumstance that they were entitled to have considered by the chancellor.

Another cross-error assigned questions the rulings of the court in the admission and rejection of testimony. We think this without substantial merit.

A consideration of the whole case leads us to the conclusion that the amended bill should have been dismissed as to all the defendants for want of equity. The decree of the circuit court will therefore be reversed and the cause remanded, with directions to dismiss the amended bill.

*Reversed and remanded, with directions.*