(No. 10982.)

JOHN BOYLSTON *et al.* Appellees, *vs.* JOHN S. HOLMES, Appellant.

*Opinion filed December 21, 1916.*

1. DEEDS—*intention of parties to deed is to be gathered from consideration of all its parts.* Deeds, as well as other written instruments, are to be considered and construed as a whole, and the intention of the parties must be gathered from a consideration of the entire instrument and all its parts.

2. BUILDING RESTRICTIONS—*interior arrangement of a building may be considered to determine which way building fronts.* The interior arrangement of a building may be taken into consideration, as well as its external appearance, for the purpose of determining the question as to which way the building fronts.

3. SAME—*doubtful restrictions should be resolved in favor of the reasonable use of the property.* Covenants in a deed which hamper the free use of property are to be strictly construed and all doubts should be resolved in favor of the reasonable use of the property, and where there is a conflict of evidence and doubt among those skilled in the designing and constructing of buildings as to which street a corner building fronts upon and as to whether or not it violates a restriction against facing on the side street, the doubt should be resolved against the restriction.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ADLER, LEDERER & BECK, for appellant.

JOHN S. HUMMER, for appellees.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellees filed their bill in chancery in the superior court of Cook county to require appellant to remove or alter that part of his building constructed on the front three-fifths of lot 120, located at the corner of Wilson avenue and Malden street, in what is known as Sheridan Drive subdivision of the city of Chicago, so as to make the same conform with

certain building restrictions contained in the deeds under which he acquired title. Appellant answered the bill, denying that the building as constructed constituted a violation of such restriction, and further alleged that appellees were estopped from maintaining their suit for the reason the plans for the building had been submitted to and approved by a committee of the Sheridan Park Improvement Association, of which appellees were members, before the building was constructed. Replications were filed to the answer, and the cause was referred to a master in chancery to take the proofs and report the same, together with his conclusions as to the law and facts. A hearing was had before the master, who made his report finding the building as constructed was in violation of the restriction in the deed, that appellees were not estopped from maintaining their action, and recommending that a decree be entered requiring appellant to remove or remodel his building so as to conform with the restrictive covenants of his deed. Exceptions were filed to the master's report, which were overruled, and a decree was entered approving the same and requiring appellant to either remove or remodel his building so as to conform with such building restrictions. This appeal followed.

It appears from the pleadings and proofs that appellees are the owners of lots in the immediate vicinity of, and in most instances in the same block with, the lots owned by appellant, in what is known as Sheridan Drive subdivision to the city of Chicago. The appellant is the owner of lots 119 and 120 in this subdivision. Lot 120 is at the corner of Wilson avenue, which runs east and west, and Malden street, which runs north and south through the subdivision. The subdivision was laid out by the Graceland Cemetery Association and contains about 354 lots. The original deed from the cemetery association to appellant's remote grantor was made upon the express condition that no house of a less value than $3500 should be erected on the lot within

seven years from the date of the deed, and that no buildings should at any time be erected, used or occupied as a livery stable or for saloon purposes or for storing liquor on the front portion of the lot lying between the building line shown on the plat and the street line of the lot. It further expressly provided: "Every corner lot in said subdivision (except those lots fronting on Clark street) is sold and conveyed upon these further conditions: that no building shall be erected upon 'the front three-fifths of such lot facing on the side street, nor shall any stable, barn or privy be placed on the front three-fifths of such corner lot." The main controversy in the case is as to whether or not the building as constructed is in violation of this latter condition or restriction in the deed.

The building erected is a three-story and basement fire-proof structure intended as an apartment hotel, with store rooms underneath, at the corner of Wilson avenue and Malden street. The stores on the rear two-fifths of the lot (the unrestricted portion) face on Wilson avenue and have their entrance from that street. That part of the building on the remaining three-fifths of the lot is claimed to front on Malden street and has its entrance on that street both to the store rooms and the apartment hotel, with a continuous row of plate glass windows in the store rooms on the first floor, on Wilson avenue, for display purposes. There is no entrance to the building from Wilson avenue, and a partition separates that part of the building on the front three-fifths of the lot from that part of the building on the rear two-fifths which faces on Wilson avenue. The entrance to the second and third floors is on Malden street, where there is a reception hall and a small rotunda, in which is located the office and from which a stairs leads to the second and third floors. The primary design of the building is that of an apartment hotel with store rooms on the first floor along Wilson avenue. The second and third floors are devoted to sleeping and living rooms, with baths

attached, arranged *en suite,* facing on Malden street. The
exterior architectural design of the second and third stories
of the building is substantially the same on both streets, the
Malden street portion being the more decorated and prom-
inent, and, considered as an apartment hotel only, in view
of its entrance and the arrangement of the apartments, un-
questionably is the front of the building. The building as
erected cost approximately $100,000. Before appellant be-
gan the construction of the building he met Klingenberg,
one of appellees, who was then secretary and director of
the Sheridan Park Improvement Association, and told him
of his intention of constructing a building on the lots; that
it was his intention to so construct it as to contain hotel
apartments and stores. Some time thereafter he submit-
ted the plans of his building to the directors of the asso-
ciation at a meeting held in the month of October, 1915.
Appellant did not attend this meeting, and there is a sharp
conflict in the evidence as to just what occurred at that
time, the plans evidently not being well understood by those
present, although it seems quite clear from the testimony
that the directors at the meeting advised appellant's repre-
sentative that they intended to insist upon a strict com-
pliance with the building restrictions.

On the hearing before the master it was stipulated that
the building restriction in the deed was valid and in full
force and effect, and that the only question at issue in the
case was and would be, first, whether or not the building
erected by said John S. Holmes on said lot 120 was in vio-
lation of the restriction in question; and second, whether
complainants were, by reason of any of the acts or omis-
sions on their part with reference to said building, guilty
of *laches* or were estopped or in any manner barred from
obtaining any relief in this case even though the said build-
ing might be in violation of such restriction. As above
stated, both the master and the trial court found against
appellant on these issues, and the cause is now brought to

this court for the purpose of reviewing their decision on these controverted questions of fact, and the errors assigned are that the court admitted improper evidence on the part of complainants and rejected proper evidence offered on the part of defendant and in not dismissing the bill for want of equity.

The only serious conflict in the evidence is in the opinion of witnesses as to which way the building fronts. The witnesses on the part of the appellees testify that the building fronts on Wilson avenue,—especially the first floor, on which the store rooms are located,—while those of appellant testify that it fronts on Malden street and not on Wilson avenue. The chief difference in the testimony of the expert witnesses for the two parties is, that those for appellees consider the store feature on the' first floor separate and apart from the building as a whole, while those for appellant take the building as a unit, the apartment hotel being considered its main feature and the store rooms of secondary importance. The building, aside from the store-room feature, is designed substantially the same on each side or front, the Malden street front being the more prominent and the more decorated. The interior arrangement, however, of the rooms on the second and third floors is such as to make the building front upon Malden street, and the entrance to the hall or reception room, rotunda and stairway to the apartment hotel is on the Malden street front, and we think, in so far as the building is considered as a unit, that under the evidence it must be held that it fronts upon Malden street, and that there is no violation of the restriction in the deed unless the store rooms on the first floor of the building are so arranged as to make that part of the building front upon Wilson avenue also. The only entrance to the store rooms is from Malden street, and we think the fact that plate glass show windows have been placed on the Wilson avenue side for display purposes can not, *ipso facto,* be said to make the building front upon that

street. It frequently happens that where a building is situated at the corner of two streets display windows will be provided for on each street and yet the entrance and front of the building will still be on but one of those streets. Such seems to be the situation presented here. There is no restriction against erecting a building that would entirely cover the front three-fifths of the lots and no restriction as to the materials of which such building may be constructed. Appellant might construct the building entirely of brick or of glass, or of both, the latter being the manner in which he did construct it. He might build it without a window on Wilson avenue or with as many windows as the method of construction would permit. In any event, the interior arrangement of the building, in so far as the evidence shows, is such as to make it front on Malden street. In *Hawes* v. *Favor,* 161 Ill. 440, we held it was proper to take into consideration the interior arrangement of the building as well as its external appearance for the purpose of determining the question as to which way the building fronted. As we understand the testimony, the building as erected presents an attractive appearance on both streets, and this is the feature which gives rise to the controversy in this case.

It is fundamental that in construing deeds, as well as other written instruments, the same are to be considered and construed as a whole and the intention of the parties gathered from a consideration of the whole instrument and all its parts. (*Consolidated Coal Co.* v. *Peers,* 150 Ill. 334.) When the deed here in question is so construed it will be seen that the primary intention of the grantors was to make the property in this subdivision desirable for residence and business purposes, and more particularly the north and south streets desirable for residence purposes. This is shown by the provisions that no building shall be constructed within seven years from the date of the deed costing less than $3500, and that no structure shall be erected or used as a

livery stable or for saloon purposes or the storing or giving away of intoxicating liquors; by establishing a building line thirty feet from the front of the lots facing the north and south streets; by providing that no building shall be erected for any purpose on that portion of the lot lying between the building line and the front line of the lot, and that no building shall be erected on a corner lot facing on a side street nor any stable, barn or privy placed on the front three-fifths of any such corner lot. When all of these provisions are considered together it will be seen that it was the desire of the grantors to make the north and south streets desirable for residence purposes. It was provided in the deeds that no building should be placed on any corner lot in such a manner as to depreciate the value of the adjoining lots by reason of being so constructed that its rear would be on a north and south street, or a stable, barn or other building of that character placed on the front three-fifths of the lot, which might have a tendency to depreciate the value of the adjoining lots fronting on north and south streets, but we do not think it was the intention of the grantors by such provisions to prevent the construction of buildings on such lots which presented an attractive appearance on the side streets as well as on the north and south streets. On the contrary, we think it was the spirit and intention of the grantors to provide for and secure the construction of as attractive buildings on these lots as consistently might be done upon both streets, so long as the main entrances and main fronts and more prominent decorative features were on the north and south streets. Such, we think, is the character of the building in question. At least the question is such a close one that men skilled in the planning and construction of buildings, such as architects and builders, are unable to agree as to which way the building fronts. Restrictive covenants of a character which hamper the free use of property are to be strictly construed against the restriction and all doubts should be resolved in

favor of the reasonable use of the property, (*Curtis* v. *Rubin*, 244 Ill. 88,) and where, as here, there is a sharp conflict in the evidence and grave doubt among those skilled in the designing and constructing of buildings which street the building fronts upon and as to whether or not it violates the restriction, we think the doubt should be resolved in favor of the building and against the restriction.

For the reasons given it will be unnecessary to consider the other questions raised.

The superior court erred in granting the relief asked for in the bill, and its decree will be reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*