## Eli Metcoff, Appellant, v. Adolph V. Dahlquist et al., Appellees.

### Gen. No. 33,025.

Opinion filed March 26, 1929.

GALLAGHER, SHULMAN & ABRAMS, for appellant.

BULKLEY, MORE, POYNTON & OVERMYER, for appellees.

Mr. Justice Barnes delivered the opinion of the court.

This appeal is from the dismissal of a bill for want of equity. The bill seeks to enjoin the violation of an alleged building line restriction in the erection of an apartment building on the southwest corner of Washtenaw avenue and Argyle street, Chicago, next to and north of complainant's property.

The bill makes as defendants the owners of the building, Adolph V. Dahlquist and wife, the former owners of the subdivision in which the lots are situated, John E. Colnon and his wife, and other parties who were mere agents of the Dahlquists in the erection of the building.

John E. Colnon having died during the pendency of the suit the cause proceeded as to surviving defendants.

After the subdivision was laid out John E. Colnon and his wife became the owners thereof. The Dahlquists purchased several of the lots in said subdivision from them and erected buildings thereon which they sold and conveyed to other parties. When the suit was commenced the Colnons had conveyed all of the lots in said subdivision excepting lot 16, bl. 3.

Said subdivision was laid out in the form of a rectangle consisting of three blocks, numbered 1, 2 and 3, from east to west, bounded on the north by Argyle street, on the east by Rockwell street, and on the south by Ainslie street. Said lot 16, bl. 3, lies along its entire west boundary and is separated by an alley from the other 15 lots in said block which front east on Washtenaw avenue. The latter street and Talman avenue run north and south through said subdivision, the former separating blocks 2 and 3, the latter, blocks 1 and 2, and parallel thereto runs an alley through the center of each of blocks 1 and 2. Said two blocks contain 30 lots each. In other words, on each side of the

alleys dividing blocks 1 and 2 are 15 lots, and east of the west alley are the 15 lots fronting on Washtenaw avenue. Each of said 75 lots, except the southern tier along Ainslie street, is 30 feet wide and about 125 feet long, and fronts either east or west on said north and south streets.

The particular property in question is lot 1, bl. 3, at the southwest corner of Argyle street and Washtenaw avenue, and the north 15 feet of adjoining lot 2 south of it owned by defendants Dahlquist and his wife, being the northwest corner of said subdivision. Complainant is the owner of the south 25 feet of lot 2, and the north 10 feet of lot 3 adjoining and south of lot 2. Said lots 1, 2 and 3, bl. 3, were purchased, part at one time and part at another, by the Dahlquists from the Colnons, and the deeds thereof contained the following restrictions:

"(1). That no building used or designed to be used in whole or in part for any purpose other than family residence purposes for one or more families shall be built on said premises prior to July 1, 1934, except private barn, garage or outbuilding, which may be erected as appurtenant to a dwelling, and not less than eighty feet from the front or street line of said premises.

"(2). That no part of any building except steps and cornice or roof projections shall be built within twenty feet of the front or street line of said premises prior to July 1, 1934, except that bay windows, porches and sun parlors may extend ten feet nearer to said front or street line.

"(3). That no building except private barn, garage or outbuilding, shall be built within thirty feet of the rear or alley line of said premises prior to July 1, 1934.

"(4). That no building with exterior walls of wood shall be built on said premises prior to July 1, 1934."

Complainant acquired title to his said property by deed dated April 21, 1923, from one Doggett and wife

"subject to building restrictions of record," and the Doggetts obtained their title thereto by deed dated February 1, 1923, from the Dahlquists subject to and specifying the same restrictions as are contained in the Colnon deed to the Dahlquists. When complainant purchased his property it had upon it a modern three-apartment brick building and a brick garage in the rear which had been erected by the Dahlquists in conformity with said described restrictions.

The bill is predicated upon the theory that there was a general scheme of restrictions binding upon all lot owners of said subdivision and that it was being violated in the erection of said building on said lot 1 by extending the same to the alley or westerly line of said lot instead of leaving space of not less than 30 feet between said line and the building, as provided for in the deed to the Dahlquists.

The master concluded from the testimony taken before him that there was no such general scheme, and recommended dismissal of the bill for want of equity. The court sustained the report and this appeal followed.

The controlling question is whether there was any such general scheme. If there was not, then it is unnecessary to consider the claims of conspiracy to nullify such restrictions or of a copartnership between the Dahlquists and Colnons. However, we do not think the evidence established either claim, and the master so found.

Complainant introduced deeds from the Colnons to purchasers, including the Dahlquists, containing such restrictions, and deeds from some of the purchasers containing them, some 60 odd, and evidence showing that buildings had been erected on many of said lots in conformity with such restrictions.

On the other hand defendants introduced various deeds from the Colnons and from the Dahlquists and

other purchasers, about 25, that did not contain such restrictions or all of them, and also waivers or releases of the alley line restriction by the Colnons as to certain corner lots upon which buildings have been erected extending to the alley line.

Altogether there are some 80 odd exhibits, consisting mostly of deeds and of some photographs of buildings. We are of the opinion, however, that the question as to the intention to establish a general scheme must be determined mainly, if not entirely, from the instruments executed by the Colnons, who became owners of the entire subdivision after it had been platted without any building line restrictions whatever. That the Colnons were free and had a legal right to impose conditions or restrictions from any motive or to withhold the same cannot be doubted and is not questioned. (*Hays v. St. Paul M. E. Church,* 196 Ill. 633; *Van Sant v. Rose,* 260 Ill. 401, 405.) It does not appear that any such restrictions were imposed upon the subdivision either by the plat or by any previous agreement or by any covenant in prior title deeds. And it does not appear that any of the conveyances made by the Colnons, or their successors, contained any covenant as to restrictions binding upon "the grantee, his heirs, executors, administrators and assigns," which is a covenant "running with the land." (*Natural Products Co. v. Dolese & Shepard Co.,* 309 Ill. 230.) In some cases the deeds of subsequent owners contained such restrictions and others did not, but no such covenant.

We are not concerned here with the obligation of the Colnons to their grantees under their deeds containing such restrictions, but whether imposing them in some cases and not in others they established a general scheme for the benefit of all subsequent owners of land in said subdivision and binding upon one another.

We recognize, as contended by appellant, that the

omission of restrictions in deeds executed by grantees who took title subject to them does not of itself affect or invalidate such restrictions (*Wiegman v. Kusel,* 270 Ill. 520), and that a slight variation or omission in the restrictions in some instances will not of itself affect the general plan of restrictions (*Velie v. Richardson,* 126 Minn. 334, 337; *Harvey v. Rubin,* 219 Mich. 307; *Sargent v. Leonardi,* 223 Mass. 556). But in the instant case the departures from such a general scheme were so many, and at a time when many of the lots remained unsold and unimproved, as to indicate the abandonment of the intention, if any, by the Colnons to establish a general scheme.

So far as complainant is concerned he had or was chargeable with knowledge as to the extent restrictions were imposed in the subdivision before he purchased his property. Before purchasing he relied upon and made a personal search of the records of conveyances of lots in said subdivision, and received an opinion and guaranty of title referring to and putting him on inquiry as to such building restrictions. There were of record at that time two instruments executed by the Colnons releasing the alley line restriction as to lot 15 in the same block as complainant's property, being the southwest corner of the subdivision, and also as to lot 1, block 1, the northeast corner of said subdivision, the latter instrument reciting that the restriction was inserted in the deed of such property "through error." On both of these corners and also at the southeast corner of the subdivision were large apartment buildings (the latter not completed) extending to the alley line. Directly across the street from the apartment building on the southwest corner of the subdivision was another large apartment building that extended up to 15 feet from the alley line, as expressly provided for in the Colnon deed of the lot. The extension of these buildings to the alley line was visible to

anyone and could not have escaped the notice of complainant when he purchased. Together with the record of such instruments they indicated an intention not to enforce the alley line restrictions at least on the corner lots. Complainant could not have been influenced by any such restriction on the Dahlquist corner north of him at the time he purchased. The title to that corner still stood in the Colnons, free from any specific restriction as to building lines until bought by Dahlquist some five months later. While the deed to him contained such restriction as to the alley line it was subsequently released by the Colnons, as they had done with respect to the other said corners. And it may be noted that the deed to complainant did not contain any specific restrictions, but was "subject to restrictions of record," however that may be construed.

It appears that the Colnons conveyed lots 25 and 29, block 1, lots 8, 23 and 24, block 2, and lots 7 and 8, block 1, without any restrictions. It also appears that while they conveyed portions of other lots with the aforesaid restrictions they subsequently conveyed the remaining portions without them. This was the fact in conveyances of portions of lots 5, 6, 9, 10, 11, 12 and 13 of block 3, and lots 13, 15, 18, 19, 20, 21, 26 and 27 of block 2. All of these deeds were filed of record during the years 1919, 1920 and 1921, some two years or more before complainant purchased. It thus appears that when he purchased there was not only of record a release of the alley line restrictions as to two corner lots, on which there were large apartment buildings extending to the alley line, and an instrument modifying the alley line restriction as to another corner, and another large apartment building started at the southeast corner of the subdivision which extended to the alley line, and that there were deeds of portions of various lots in the other blocks without building restrictions, but that of the 15 lots already conveyed in

block 3, where complainant's property was situated, the Colnons had conveyed two entire lots and portions of seven others without any restrictions whatever, having a total frontage of 175 feet, a fraction of over 37 per cent of the total Washtenaw avenue frontage in block 3. These numerous departures from an alleged scheme, appearing as they do among the very earliest conveyances of the Colnons, disclose such a lack of uniformity as to indicate no intention to adopt a general scheme that would be binding on all of the Colnon grantees and their successors. It adds nothing, perhaps, to this state of the record to say that it also appears that in many conveyances of their grantees these restrictions were omitted or to note, as asserted by counsel for appellees, that counting the several instruments placed of record 40 per cent of them contained no such restrictions.

We deem it unnecessary to go further into details or to discuss alleged representations of Dahlquist to complainant on which the latter predicates an estoppel to deny the right to enforce such restrictions against him. While the alleged representations were denied, yet if there was no general scheme, as claimed, that was binding on Dahlquist, there is little room for the assertion of the doctrine of estoppel, there being no privity of contract between complainant and the Dahlquists.

While the deeds from the Colnons of most of the lots, either in part or whole, contained such restrictions, yet in view of so many deeds without such restrictions, and the other facts above enumerated, we do not think the evidence was sufficient to show the establishment of a general scheme of building line restrictions binding or intended to be binding on all lot owners in the subdivision. Nor was there in the Colnon deeds containing restrictions any covenant that they were to be imposed in all other deeds. It cannot, therefore, be said upon this state of facts that complainant has a clear

right to enforce the alley line restriction against the Dahlquists or any of the defendants; or, in other words, that the Dahlquist lot was burdened with the restriction as to the alley line for the benefit of complainant's lot. As has been frequently said when a fee is conveyed, limitations and restrictions upon the use of the property are not favored, and all doubts, as a general rule, are to be resolved against them. (*Hays v. St. Paul M. E. Church,* 196 Ill. 633; *Loomis v. Collins,* 272 Ill. 221; *Curtis v. Rubin,* 244 Ill. 88; *Boylston v. Holmes,* 276 Ill. 279; *Labadie v. Morris,* 303 Ill. 321.)

Cases where there were recorded plats designating the building line, or agreements of record binding all owners in the block or subdivision, or uniform restrictive covenants in all deeds from the original owner, are not pertinent to the facts and circumstances of this case. It would subserve no useful purpose to review them. Considering, as we do, that the facts in evidence are insufficient to show the establishment of a general building scheme binding on all lot owners of the subdivision, their grantees and privies, and that the absence of the building restrictions from so many deeds destroyed the uniformity essential to establish a general plan (*Clark v. McGee,* 159 Ill. 518), and that where the right to enforce the restrictions is doubtful the doubt will be resolved against the restrictions, we think the court properly dismissed the bill for want of equity.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.